Groover *et al. vs.* King.

NANCY GROOVER *et al.*, plaintiffs in error, *vs.* JAMES KING, defendant in error.

1. A paper, signed by the Ordinary, purporting to grant to an administrator leave to sell the land of the estate which he represented, which had never been recorded or entered on the minutes of the Court, and without proof that such order had been granted, at a regular term of the Court of Ordinary, is inadmissible in evidence. (R.)

2. The recital in an administrator's deed, executed on the 3d day of December, 1861, that leave to sell the land was granted in November last past, is notice to the purchaser that the requirement of the law, as to forty days' public notice of the sale, had not been complied with. (R.)

3. Although the minor heirs of the intestate may have had a guardian who receipted to the administrator for their portion of the proceeds of the land, without any knowledge of the illegality of the sale, yet they were not estopped from asserting their claim to the land, when they obtained a knowledge of such illegal sale, they accounting for the money received. (R.)

4. Estoppels are not favored by the Courts. (R.)

Order for sale of land from Court of Ordinary. Notice. Administrator's sale. Recitals in deed. Estoppel. Before Judge ALEXANDER. Brooks Superior Court. May Term, 1871.

Nancy Groover, widow of Josiah Groover, deceased, Richard D. Harris and his wife Charlotte, formerly Charlotte Groover, and daughter of said Josiah Groover, deceased, James M. Rushin and Julia his wife, daughter of said Josiah, Axon J. Moody and Frances his wife, daughter of said Josiah, Agnes Groover, Solomon Groover, Moses Groover, Josiah Groover, Ellen Groover, and Jane Groover, minor children of said Josiah Groover, deceased, filed their bill against James King containing substantially the following allegations: that Josiah Groover, died in November, 1850, leaving considerable real and personal estate; that Asa Kemp was appointed administrator upon the estate of said Josiah illegally, without notice, and when there was already a legally appointed administrator upon said estate; that said Kemp made application for leave to sell all the·

Groover *et al. vs.* King.

real estate, as appears from a deed executed by said Kemp as administrator on December 3d, 1861, conveying to James King two lots of land situate in the fourteenth district of Brooks county, and known as lots numbers sixty-five and sixty-six, containing nine hundred and eighty acres, more or less, with the exception of forty acres of lot number sixty-five and thirty acres from lot number sixty-six ; that said deed contains the following recital : " Whereas, the Ordinary of said county of Brooks did, at his Court, holden in the month of November last past, empower the said Asa Kemp, as administrator as aforesaid, to sell and dispose of the real estate of said Josiah Groover, deceased;" that the records of the Court of Ordinary fail to show any application for leave to sell, or any order authorizing the sale; that said Kemp illegally exposed said lots for sale, with other lots, one of which, to-wit: number twenty, in the fourteenth district, said administrator became the purchaser through one John A. McIntosh; that said pretended administrator did sell the two lots set forth in said deed to James King, who became the purchaser with the knowledge that said lands had not been advertised forty days as required by law after an order was passed granting leave to sell the same, if any such was passed ; that said deed, bearing date December 3d, 1871, recites that said sale was effected " on the first Tuesday of this present month;" that said James King purchased said land and received said deed with the fact appearing upon the face of the same ; that forty days' notice could not have been, and was not given of the sale ; that said James King gave his notes for said land, and finding them in the possession of Nancy Groover, guardian of the minor children of said Josiah Groover, deceased, by intimidation and fraud, operating upon her fears, through the assistance of others having an undue influence over her, induced her to take spurious money, or that which was really worthless, stating if she did not she would get nothing ; that said King had twice before, in the year 1864, applied to said Nancy Groover to take said spurious money, which she refused ; that after-

Groover *et al. vs.* King.

ward King brought one Joshua Groover, in whom said Nancy had great confidence, to see her, and they together represented to her that it was best to take the Confederate money; that this interview was in the latter part of 1864 or first of 1865; that said Nancy Groover, under these fraudulent representations, received the money, and still has the same in her possession. Prayer: that James King be enjoined from selling said land or from encumbering the same, and from committing waste; that a Receiver be appointed to take charge of the said land and to receive the rents, issues and profits thereof; that King may account for waste committed, and for the rents, issues and profits; that said deed from Asa Kemp, administrator to said King, may be decreed to be delivered up and canceled as fraudulent, illegal and void, or that said King be decreed to pay the purchase money as mentioned in said deed, with interest thereon; that King be compelled to deliver up the possession of said land.

The defendant, James King, answered the bill substantially as follows: that James M. Rushin was the first administrator of said Josiah Groover, deceased; that said administrator advertised notice of application for leave to sell said land in the Thomasville Enterprise, the proper gazette for that purpose, on April 15th, 1861; that the leave to sell was considered as granted, as none of the complainants or of the creditors of said Josiah, deceased, interposed objections; that the formal order was not drawn up until it was called for at the ensuing November Term of said Court of Ordinary; that the formal order was dated November 4th, 1861; that said James M. Rushin proceeded, on October 16th, 1861, to publish notice of the sale of said lands; that the aforesaid notices and orders of the Ordinary were had at the instance of said James M. Rushin, one of the complainants; that said James M. Rushin applied for letters of dismission on July 24th, 1861, and that notice was given to all persons concerned to show cause to the contrary on the first Monday in October, 1861; that said Asa Kemp, on the said July 24th,

1861, applied for letters of administration on said estate, as successor of said Rushin, of which application notice was duly published; that said Rushin was duly dismissed and said Kemp appointed; that said appointment was made by the express assent of complainants; that the order for the sale of lands, granted to Rushin while administrator, enured to Kemp, as his successor, by operation of law; that the notice given by said Rushin of said sale was sufficient in law for the sale by Kemp; that said sale did take place on the first Tuesday in December, 1861, and defendant became the purchaser of lots sixty-five and sixty-six, with certain exceptions, as set forth in the bill, at the price of $9,121, which, at the time of the sale, was regarded as a very large price; that defendant denies that there was any violation of law by the said Kemp in the said sale, and that he had any notice whatsoever of any illegal step taken, or any irregularity committed by said Kemp in said sale, whether appearing upon the face of said deed or otherwise, but that defendant purchased in good faith; that Nancy Groover, one of the complainants, and others, purchased at said sale, without any question as to its legality; that said sale took place during the late war, when there was great confusion and interruption in the Courts of the country, and it would be contrary to public policy and disastrous to the country to hold that any irregularity would vitiate the sale; that defendant took possession and made large improvements thereon to the value of $3,000, or other large sum; that defendant has been in continuous possession more than seven years, relying upon said title, as was well known to complainants; that no waste has been committed, but, on the contrary, the improvements have largely enhanced the value of said lands; that defendant gave his notes for the purchase money in sums of $1,000, with personal security; that one of said notes was delivered by said Kemp to R. D. Harris, one of the complainants, who received it as his part of the proceeds of said estate, and that defendant has paid said note to said Harris in full, and that said Harris has no further claim upon him or upon said lands; that another of said

notes was paid by Kemp to James M. Rushin, one of the complainants, who received it as his distributive portion, which said note defendant has paid in full, and said Rushin has no further claim upon defendant or upon the land; that defendant found his other notes in the possession of said Nancy Groover, one of the complainants, and insists that, she having accepted said notes from said Kemp, thereby ratified said sale, and cannot now deny its legality; that defendant denies any and all·manner of intimidation, and fraudulent practices operating upon the fears of said Nancy Groover to induce her consent to his paying said notes, but, on the contrary, alleges that she accepted payment of said notes freely and deliberately, and that defendant took Joshua Groover to her house at the time of said payment solely for the purpose of having said Joshua calculate the interest on said notes, and any advice given by said Joshua to said Nancy was not at the instance or procurement of defendant; that, defendant paid said Nancy all but one of said notes in Confederate money, when said currency could be used to purchase such property as was not scarce, by reason of the war, to about as great an amount as could have been purchased with the currency of the country when said sale took place, or at any time since the war; that defendant procured a portion of said money by selling his cotton at twelve cents per pound, for the purpose of paying said notes; that Confederate money, at the time of the payment aforesaid, was the only currency in the country, and universally received in satisfaction of debts contracted before or during the said war; that said currency was, by law, then receivable in payment of debts due to administrators, executors and guardians, and payments made to such trustees during the war have been since confirmed by the Legislature; that the last payment was made to said Nancy about or during the month of May, 1863, in currency, as stated, and by the substitution of a note made by one Willis A. King for $1,000, and indorsed by this defendant, which note was long since paid by said King; that if the said notes had not been paid, they would be subject to

the Act entitled an Act for the relief of debtors, etc., and defendant insists upon the benefit of said Act; that on the ...... day of ......, 18..., said Asa Kemp made his return of a full and final settlement with the distributees of said estate to the Court of Ordinary of said county, and applied for letters of dismission from the said administration ; that notice of such application was published in terms of the law, and that no objections were filed by any of said parties, or any person whatever, either to the final settlement or to the application for letters of dismission, and that, at the January Term, 1864, of said Court of Ordinary, said Kemp was duly dismissed from said administration.

Upon the trial, under the charge of the Court, the jury returned a verdict for the defendant.    The complainants moved for a new trial, upon the following grounds, to-wit:

1st.  Because the jury found contrary to law.

2d.  Because the jury found contrary to the evidence.

3d.  Because the verdict of the jury is decidedly and strongly against the weight of evidence.

4th.  Because the Court erred in allowing defendant to put in evidence the letters of administration of Asa Kemp, when it appeared from the minutes of the Court of Ordinary of said county of Brooks that there was no order of said Court of Ordinary dismissing James M. Rushin, a former administrator, and no order on said minutes appointing said Kemp administrator.

5th.  Because the Court erred in allowing defendant to put in evidence what purported to be an order for the sale of the land, brought into Court by defendant, and which had never been recorded, had no seal, and without evidence that it had been passed in term time; when no such order appeared on the minutes of the Court of Ordinary, the same not being a certified copy of any order, and upon the statement of the witness, Kemp, that the order had been written by the Ordinary in 1861, on November 4th, and had been retained by him until after the suit was commenced in 1869.

6th.  Because the Court allowed the defendant to put in

evidence the returns made by said Asa Kemp, when it did not appear that he was ever legally appointed such administrator by an order of the Court of Ordinary of said county.

7th. Because the Court failed to charge (counsel in argument having so requested,) "that if King bought with notice that the sale was illegal, then he was a trustee for complainants and should account for the land to them in this suit."

8th. Because the Court failed to charge the jury, "that if King had notice in any way, by the deed or otherwise, that the sale was not made in the manner prescribed by law, that it conveyed no title to defendant."

9th. Because the Court erred in charging, " that the Ordinary was presumed to have discharged his duty in issuing the letters of administration to Asa Kemp, though such presumption might be rebutted by proof," when it appeared by the minutes of the Court of Ordinary that no order had ever been passed appointing said Kemp administrator.

10th. Because the Court charged " that a receipt in full of the distributive share of the estate, including the proceeds of the land sold by the administrator and specifically returned to the Ordinary, and the deed recorded in the proper county within the twelve months, will estop the heirs-at-law from setting up title adverse to the title of the purchaser, especially when the heirs were of full age at the time of the sale, and the administrator had been discharged from the trust, under citation issued and published for the purpose."

11th. Because the Court erred in charging, " that if the minors had a guardian at the time, they were estopped."

12th. Because the Court failed to charge, " that if the plaintiffs or their guardian had no notice of the want of legal authority to sell the land by the administrator at the time of the sale, then the plaintiffs were not estopped."

13th. Because the Court erred in charging, "that if the representations of the defendant related to facts, and they were untrue, that there was fraud; but if the representations related to mere opinions, of which both parties could judge,

although those opinions might afterwards prove to be incorrect, then there was no fraud."

All the facts necessary to a clear understanding of the decision of the Court are embraced in the bill, answer and motion for a new trial, without an insertion of the evidence.

The motion for a new trial was overruled and complainants excepted, assigning said ruling as error upon each of the grounds aforesaid.

A. T. McIntyre; Hunter & McCall; James L. Seward, for plaintiffs in error.

Hansell & Hansell; H. G. Turner; S. S. Kingsbury, for defendant.

Warner, Chief Justice.

This was a bill filed by the complainants against the defendant to set aside a sale of certain described lands purchased by the defendant at an administrator's sale on the 3d day of December, 1861. On the trial of the case the jury found a verdict for the defendant. A motion was made for a new trial on the several grounds specified in the record. The Court overruled the motion, and the complainants excepted. Whether the letters of administration of Kemp, offered in evidence, which were issued to him by the Ordinary upon the resignation of Rushin, could be *collaterally* attacked upon the ground set forth in the fourth assignment of error, this Court is not prepared to deliver an unanimous judgment, and we, therefore, express no opinion in relation to that question. In our judgment, the Court erred in admitting in evidence the paper signed by the Ordinary purporting to grant leave to sell the land, brought into Court by the defendant, which had never been recorded, or entered on the minutes of the Court, and without evidence that such an order for the sale of the land had been granted by the

Groover *et al. vs.* King.

Court of Ordinary at a regular term of the Court. This administrator's sale, as well as the other proceedings in relation thereto, took place prior to the adoption of the Code, and must be controlled by the then existing law. The seventh section of the Act of 1852 declares that no order for the sale of real estate shall be granted except at a regular term of the Court of Ordinary. The action and proceedings of a Court of record must be shown by its records; that is the highest and best evidence of its action in relation to the subject-matter confided to its jurisdiction. It is not pretended that the records of the Court of Ordinary of Brooks county have been lost or destroyed, and there is nothing upon the records of that Court which shows that an order for the sale of the land in controversy was ever granted by *that Court,* which was an indispensable prerequisite to divest the heirs of their title to the land and vest the same in the defendant as a purchaser thereof at the administrator's sale. The Act of 1852 also declares that forty days' public notice of the sale of the land should have been given by the administrator after leave had been granted by the Court of Ordinary to sell it. The pretended order for the sale of the land, offered in evidence in this case, is dated 4th of November, 1861, and the sale took place on the first Tuesday in December, 1861, twenty-nine days only after the pretended order of the Court bears date. The deed made by the administrator to the defendant recites that leave to sell the land was granted in November last past, before the making and delivery of the deed to him, on the 3d day of December, 1861, so that the defendant had *notice,* on the face of his deed, that the requirement of the law, in that particular at least, had not been complied with so as to make it a legal and valid sale.

Although the minor heirs of the intestate may have had a guardian, and that guardian may have receipted to the administrator for their share of the proceeds of the sale of the land without any knowledge of the illegality of the sale, as the evidence in the record shows, they were not estopped

from asserting their claim to the land when they obtained a knowledge of such illegal sale, and it was error in the Court to charge the jury that they were estopped.   Estoppels are not generally favored by the Courts, and it would be a very harsh rule to establish that the minor heirs in this case were estopped when their guardian had no knowledge of the illegality of the sale of the land.   But in electing to set aside the sale they must account for what they have received from the sale of the land: they cannot have the land and retain the proceeds of the sale thereof.

Let the judgment of the Court below be reversed and a new trial ordered.