East Tenn., Va. & Ga. Railway Co. *v.* Fleetwood.

1. There was no error in refusing a continuance to a railway company on the ground of the providential absence of its "law-agent," whose duties were to get up evidence in all cases in the court wherein the continuance was asked, to secure the attendance of witnesses, assist counsel in the trial of cases, prepare cases for trial so far as the evidence was concerned, and also had charge of all papers and documentary evidence connected with the litigation, it not appearing in the particular case in question how or why defendant's counsel could not go safely to trial in the absence of such "agent."

2. A continuance will not be granted in a civil case for the absence of a witness who has been subpœnaed but does not reside in the county where the suit is pending, even though the witness had resided in that county, and defendant's agent, by whom the subpœna was served, believed he still lived there, it appearing that such non-residence could have been easily ascertained by the exercise of proper diligence.

3. Where a railroad conductor, without apparent provocation, rudely assaulted a passenger, used to him grossly opprobrious and insulting language, caught hold of him roughly and pulled him to the end of the car, threatened to kill him, appeared about to draw a pistol on him, and spit tobacco juice in his face, the company is liable for punitive damages, and will not be permitted to prove in mitigation thereof that on some previous occasion the passenger had used slanderous and indecent language about the conductor's sister-in-law, and that this was the reason of the conductor's conduct, it being the first meeting between them since the alleged language of the passenger had been communicated to the conductor, when it does not appear how long before the assault the passenger had spoken the words ascribed to him or how long the conductor had been informed thereof. If such facts could be received at all in mitigation of damages, their occurrence must have

been so recent as to indicate that the conductor acted under the immediate provocation thereof and had not had time to control the passion produced thereby.

4. When a witness for the defendant is offered to prove facts which the court rejects as irrelevant and no evidence is introduced by the defendant, his counsel are entitled to open and conclude the argument, but the opening and conclusion are lost if they prove by this witness any facts that are material to the defence.

5. A charge of the court to the effect that sneers, looks and contemptuous gestures will not justify an assault by a conductor upon a passenger, and that a railroad company is not released from its contract guaranteeing polite and courteous treatment to a passenger because the passenger does not smile upon the conductor or because he wears a frown, is not erroneous. Failure to charge that such conduct of the passenger could be considered in mitigation of the damages, is no cause for a new trial when no request to so charge was made.

6. The verdict, though very large, is not so excessive as to authorize this court to set it aside after it has been approved by the trial court.                                        *Judgment affirmed.*

August 27, 1892.

Railroad passenger. Damages. Evidence. Continuance. Argument. Before Judge ROBERTS. Pulaski superior court. November term, 1891.

Fleetwood sued the railway company for damages, and obtained a verdict for $4,375. A new trial was denied, and the defendant excepted. The plaintiff alleged that on August 3, 1889, he was a passenger on the defendant's train from Cochran to Hawkinsville; that when about two miles from Cochran, and in the regular passenger-coach, Davis, the conductor in charge and control of the train, demanded and received his fare which was willingly and promptly paid; that he had not spoken or done aught to Davis, or had anything to do with him directly or indirectly, but as soon as Davis had collected his fare, he (Davis) immediately began wilfully and maliciously to use of and to him the words, "You God damn little son of a bitch," and other profane epithets, and threatened to kill him, at the same time throwing his hand behind to his hip-pocket as if to draw

a pistol, and wilfully and maliciously did spit in plaintiff's face, and in abusive terms and profane language ordered him to get up from his seat and retire to the rear of the car, and assaulted him, seizing him violently by the arm, and attempted to do him serious bodily harm and injury; all of which was done by Davis in the sphere and prosecution of his duties to the defendant.

The first special ground of the motion for a new trial alleges error in overruling a motion for continuance on account of the absence of Jordan, defendant's law agent, and of Hendley, a witness by whom the defendant expected to prove that the conductor did not spit in the plaintiff's face; counsel stating that they did not know until the day of the trial and just before any testimony was offered, that Hendley was a witness or what he would testify, the matter of getting up the evidence and securing the attendance of witnesses, and the preparation of the case so far as the evidence was concerned, being left entirely with Jordan, the law agent; that Hendley was not absent by their procurement or consent; that they expected to have his testimony at the next term ; that the motion was not made for delay, but to procure the testimony of the witness, and the attendance of the law agent who stood in the place of the defendant; that they could not safely go to trial without him ; that the present counsel had but recently been employed, original counsel for defendant having retired; and that they had expected Jordan to be present until an hour previously, when they were notified by telegraph that he was sick in bed at Macon.   It was further shown that just before the last term, Jordan had caused a subpœna' to be served on Hendley as a witness, who was supposed then to reside in the county of the suit (Pulaski), and he attended court at the last term.   The plaintiff proved by four witnesses that Hendley removed

from Pulaski to Wilcox county about a year before the trial; and one of plaintiff's counsel testified that he had Hendley subpœnaed last fall, and that while Hendley attended the last term of court, he told this counsel that he would not attend on the case because he lived out of the county and could not be compelled to attend.

The plaintiff's testimony was, in brief, as follows: Boarded the defendant's train on or about August 3, 1889, at Cochran to go to Hawkinsville. Rufus McGriff, L. P. Wimberly and W. L. Hendley, no others, were on the car; it was a car where ladies ride. Davis was conductor on that train; he had been conductor about five years. I paid him full fare for my passage to Hawkinsville; was then about two or three miles beyond Cochran; was sitting in a seat when he came in, and I gave him the fare. The first thing I knew, he called me a damn little son of a bitch, and said that he had been waiting to get me, and now he had me. He placed his hand to his hip pocket as if to draw a pistol; he spit tobacco spit in my face, and it ran down on my shirt front, and struck me in the face two or three times with his open hand, and said that he had a great mind to kill me. I said nothing to make him act so, and had not spoken to him for five or six months. I have ridden both before and after this occurrence on the train with Davis as conductor. When he came in I was looking out of the window. Treated him that way because I did not like him. Have had no conversation with him since; do not speak to him; did not speak to him that day. I took the attack without resenting it because I thought he was fixed and I was not. Have known him six or eight years; about four or five years of that time I was friendly with him. Did not feel very good towards him on that day; had not seen him for three or four weeks. Was sitting near the rear of the car. Wimberly was about three or four seats in front of me. When Davis

came in I was looking out of the window; I did that because I did not like him. He said fare, and I without looking at him, extended my hand towards him with the fare in it, and dropped it in his hand. After I did so he said, "You dirty little son of a bitch; I have been after you for some time; I have a good mind to put you off." He caught me by the arm and led me to the rear of the car, and Wimberly got between us. He spit in my face, on the side, and it ran down on my shirt and collar. I didn't do anything. I never said a word because I had nothing. I did nothing by word or act to make him treat me as he did. I was not doing much of anything in the way of business; was just shifting about; sometimes helping my father about his warehouse, checking for him. I was then about 21 or 22 years old, and was a single man.

Upon this testimony the defendant moved for a nonsuit, on the grounds that the evidence did not show that the plaintiff had sustained any damage, and failed to sustain the allegations in his declaration. The overruling of this motion is another of the grounds for a new trial.

Upon the refusal to grant a nonsuit, the defendant's counsel stated that they proposed to show by Davis, in order to palliate and mitigate the damages, simply that his reason and motive for making the alleged assault was because the plaintiff had been using slanderous, indecent and scandalous language about Davis's wife's sister, and that Davis had not seen the plaintiff since the matter was communicated to him, until he met him on the train; but that, the court having refused to allow the plaintiff to answer any questions tending to establish the same facts, counsel did not wish to lose the conclusion in the argument by offering Davis as a witness; and so requested the court to rule whether Davis would be permitted to testify to the facts indicated.

The court refused to rule on the question till Davis was introduced and sworn as a witness, stating that if the questions were not allowed, the defendant's counsel would be entitled to the conclusion. The questions were propounded to him, when the court repelled the testimony sought to be elicited, as stated. The defendant then proposed to withdraw the witness and his testimony, and claimed the conclusion; but upon motion of plaintiff the court refused to allow this, for the reason that the witness had testified, in answer to the question of defendant's counsel, " If plaintiff did not hand him his fare in a contemptuous manner ?" that "He did, and he caught his eyes, and that he saw a sneer on his face." Thus defendant's counsel were denied the conclusion of the argument; and it assigns the rulings of the court as error.

Other grounds allege that the court erred in refusing to allow the plaintiff, on cross-examination, to answer the questions, whether he spoke slanderous and indecent language about Davis's sister, and whether it was because he so spoke that the conductor acted towards him as he did; and in refusing to allow the conductor to answer questions to the same purport.

It was assigned as error that the court charged that "sneers, looks or contemptuous gestures will not justify an assault by the conductor upon a passenger," and failed to charge, without request, by way of illustration, that the jury might consider contemptuous looks, gestures and sneers on the part of the plaintiff, in mitigation of damages; the argument and theory of defendant's counsel being that such looks, gestures and sneers were attendant facts and ought to be considered in mitigation of damages.

The court charged: "The question is, was there a contract guaranteeing polite and courteous treatment, and then was that contract carried out ? Sneers, looks

or contemptuous gestures will not justify an assault by the conductor upon a passenger. A conductor is not released from that contract because a passenger does not smile upon him, or because he wears a frown." This is alleged to be error because not justified by the evidence, or by the issues involved, or by the theory of the defence, and because it was calculated to mislead the jury.

The refusal to charge as follows is assigned as error : "If the jury should find that the plaintiff is entitled to recover any damages, in estimating the amount of damages, the railroad company would be liable for such damages as would be given against the agent or conductor if he were personally sued as principal."

It is further complained that the charge of the court in its entirety is erroneous in that it does not cover the issues involved, and absolutely excludes from the jury the consideration of any facts or circumstances tending to palliate the alleged assault, or in mitigation of damages. And it is alleged that the verdict is contrary to law and evidence, and is excessive. There was testimony by the conductor, denying that he did the things alleged by the plaintiff, save the act of spitting in his face, which was admitted. He further testified that he called for the fare two or three times before plaintiff paid it, which he finally did contemptuously and with a sneer on his face, throwing the money into the conductor's hand.

DeLacy & Bishop, for plaintiff in error.
Martin & Smith, contra.