Candler, executor, *v.* Clarke *et al.*

90 550
94 496
90 550
100 38
90 550
116 32
90 550
117 782
90 550
119 138
90 550
121 77
90 550
129 634

1. Where two persons administer upon an estate and one of them is also guardian of the minor heirs of the intestate who have an undivided half-interest in the estate, and the administrators, after obtaining an order for the sale of the land, sell it, and at the sale each buys a part thereof, both together buying it all, the sale is voidable at the instance of the heirs. In such case, where one administrator, who has an undivided half-interest in the estate, buys more than half of the land in value and pays the excess to the other administrator as guardian, who wastes the money, such payment to the guardian will not bar the election of the heirs to reclaim the land; and in order to retain the land the administrators must account to the wards for at least the amount so wasted by the guardian. The administrators, having co-operated in a breach of trust by purchasing at their own sale, could not, by passing money from one to the other, take off of themselves the risk of the safety of the fund and put that risk upon the minors.

2. A recovery by the heirs against the administrators was not precluded by a judgment of the ordinary against the guardian in a proceeding instituted by a surety to be relieved from the guardian's bond and to cite him to a settlement, upon the ground of waste and mismanagement, by which judgment the guardian was removed and directed to pay over to his successor an amount found to be due by him as guardian to such heirs, including proceeds of the illegal sale, nothing having been collected on the judgment and the heirs having done nothing to ratify it.

3. Heirs who elect to avoid a sale by an administrator to himself must do so within a reasonable time, and analogizing a suit for realty thus purchased by the administrator to other actions for realty where the defendant holds under color of title, the election ordinarily should be made within seven years from the time of the sale, by heirs who are of age and not under other disability at that time, or if then under disability, within seven years after the disability has been removed. The evidence does not show affirmatively that more than seven years had elapsed from the removal of the disability of any of these plaintiffs when the suit was commenced.

4. Proper diligence was not shown in procuring the newly discovered testimony before the trial.

5. There was no error, as against the defendant, in refusing a new trial on the terms prescribed by the court.

November 9, 1892.

Administrator. Guardian. Sale. Minor. Judgment. Election. Before Judge RICHARD H. CLARK. DeKalb superior court. February term, 1892.

CANDLER & THOMSON, for plaintiff in error.

GEORGE HILLYER and HULSEY & BATEMAN, *contra.*

SIMMONS, Justice.

In 1871, Benjamin Burdett died intestate, leaving as his heirs at law his widow and the children of his deceased daughter, who were minors. The widow, Mrs. I. C. Burdett (afterwards Craig), and Elijah H. Clarke, the father of these children, were appointed administrators. In 1872 and 1873, at public sales by the administrators, under an order of the court of ordinary, the lands of the estate were bid off in separate parcels by parties who, after taking conveyances thereto, reconveyed to the administrators individually; and the administrators, in their returns to the ordinary, reported that they were themselves the purchasers. The returns showed that Mrs. Burdett bought separately 276 acres for $3,500, that Clarke bought separately 202½ acres for $1,800, and that both of them bought together 23 acres for $770, Mrs. Burdett, as appeared from the deeds put in evidence, taking 17 acres of this last mentioned quantity, at $575. The returns show also that half of the total amount realized from the sales was paid over to Clarke, as guardian for the children, as their share of the proceeds. It appears that this money was afterwards wasted by Clarke.

In July, 1890, the children (all of them having attained majority, except one who was represented by a guardian *ad litem*) filed their petition against Clarke and against Candler, the executor of Mrs. Craig, in which they declared their election to avoid these sales, and prayed for a decree against both defendants for the value at that time of so much of the lands as had passed into the hands of innocent purchasers, and that as to

all the lands the title to which still remained in either of the defendants, they might recover a half-interest. They prayed also that the alleged sales by the administrators and the deeds made in connection therewith be declared void; that they might recover the rents, that an accounting be had, etc. They charged waste and mismanagement on the part of both administrators.

Clarke filed no answer, but Candler, as executor of Mrs. Craig, answered that the property was disposed of by Clarke and Mrs. Craig as administrators, in the manner prescribed by law, and that after paying debts and expenses, half of the proceeds was paid over to Clarke as guardian for the petitioners, who had notice of every fact connected with the sales and received the full distributive share of his wards and made return thereof to the court of ordinary; that subsequently he was removed from the guardianship and another guardian appointed in his stead, at which time a judgment was rendered against him for $5,818, which included the money received by Clarke as guardian from the sale of this realty; that the land alleged to have been purchased by Cox and reconveyed to Mrs. Craig was not in possession of Mrs. Craig when she died, she having long previously sold and conveyed it to parties who were then in possession of it.

It appeared from the evidence that Candler, as her administrator, was still in possession of 276 acres of the land purchased by her, and that the remainder, as stated in the answer, had been sold to other persons. The land purchased by Clarke had also been sold to others, and he was then insolvent.

The verdict was in favor of the plaintiffs for a half-interest in the 276 acres, this interest being valued at $2,500; for "half of eleven acres," $2,200; and for cash on hand, $238, with interest on the $238 for fifteen years, $285.60, the whole amounting to $5,223.60.

The defendant Candler made a motion for a new trial, and the court ordered that the motion be granted unless the plaintiffs would write the verdict down to $2,404.54. This the plaintiffs did. Candler then excepted to the overruling of his motion, and insisted that the verdict should have been only for the sum of $286.90, admitted to have been due. It was conceded that several of the alleged errors complained of in the motion for a new trial were cured by writing down the verdict as directed in the judge's order.

The verdict as reduced accords substantially with one of the bases submitted by the court to the jury to guide them as to the amount of their finding. According to this basis, the extent of Mrs. Craig's liability was the balance admitted to be due as funds retained by her as administratrix, which with the interest thereon amounted, as we have seen, to $286.90, and in addition to this, the sum of $1,040, " advantage in value " received by her in these purchases, with interest for fifteen years, counsel agreeing, for reasons which appear in the record, that interest should be confined to this period. The sum total is slightly in excess of the amount of the verdict as reduced. The $1,040, " advantage in value," appears to have been reached in the following manner : The value of the land received by her through these sales, at the prices paid by her, was $4,075 ; the aggregate value of all the land, at the prices paid, was $6,070. Treating her as entitled, by reason of her half-interest in the estate, to half of the lands sold, she received $1,040 more in value than her share, or that much of the share to which the children were entitled, and the court accordingly held her accountable to them for this amount.

It was contended in behalf the plaintiff in error, (1) that " advantage in value " was not a proper basis for estimating the amount of Mrs. Craig's liability; (2) that

the children were bound by Clarke's receipt as their guardian for their share of the proceeds of the sales; (3) that they were estopped by the judgment in their favor removing Clarke from the guardianship and directing him to pay over to his successor an amount which included their share of the proceeds; (4) that some of the children were barred because of their failure to sue within a reasonable time.

1. Administrators are prohibited from purchasing, either directly or indirectly, at their own sales, property of the intestate's estate; and such purchases are voidable at the election of the heirs, if they move within a reasonable time. *Shine* v. *Redwine*, 30 *Ga.* 792; *Grubbs* v. *McGlawn*, 39 *Ga.* 674; *Alexander* v. *Alexander*, 46 *Ga.* 290. These plaintiffs, therefore, unless barred by lapse of time or for some other reason, had the right to avoid the purchases by Mrs. Craig and Clarke and to reclaim their share of the property, as they elected in this case to do. If entitled to reclaim their share, they were entitled to a half-interest in the 276 acres which were still in the hands of Mrs. Craig's executor, and a proper compensation for their interest in that part of her purchase which had passed into the hands of innocent purchasers; and so the jury found by their verdict. The value of their half-interest in this property when purchased by Mrs. Craig, assuming that its true value was the price paid by her, was $2,037.50. According to the return of the appraisers some time before, the whole amount sold was worth about $1,200 more than what was reported as paid by Mrs. Craig and Clarke. At the time of trial, their interest in the part purchased by Mrs. Craig, as found by the jury, was worth $4,700, and this did not include several acres shown by the deeds to have been purchased by her. The judge, however, in reducing the verdict, placed the liability of Mrs. Craig upon a different basis from that adopted by the

jury, proceeding apparently upon the theory that she was liable, not for the property itself, but for the amount necessary to equalize her share with that of the other heirs; and that except as to this amount, she was not affected by the misconduct of their guardian.

It is not apparent why this basis was adopted, unless, as suggested in the argument of counsel before us, the court below treated these purchases as a mode of division of the lands in kind between Mrs. Craig on the one hand and Clarke as guardian for the children on the other, and held the division proper except as to the excess in value over and above what she would be entitled to as her half of the property. We find nothing in the record, however, to warrant the adoption of such a basis. It appears that there was an order for the partition of the lands, and that partitioners were appointed, but it does not appear that any action was taken under this order.

But if the court erred in the adoption of this basis, the result is in favor of, rather than against the plaintiffs in error. If there was no division in kind, but the transactions were simply what they appear to have been, unlawful purchases of the property, the plaintiffs were entitled, unless barred, to reclaim their interest therein; and the value of their interest in the part purchased by Mrs. Craig, as found by the jury, was about double the amount of the verdict as reduced by the court.

It is contended, however, that the plaintiffs were bound by the receipt of Clarke as their guardian. This position is clearly untenable. The co-operation of Mrs. Craig and Clarke in the unlawful purchase of these children's property was a breach of trust on the part of both of them as administrators, and on the part of Clarke in the additional capacity of guardian, and each became liable for the safety of the fund arising from

the breach, whether it was held by the one or the other, and whatever may have been the capacity in which either of them held it. They could not, by passing money from one to the other, cast off the risk of the safety of the fund and put that risk upon the minors. Having obtained the land unlawfully, Mrs. Craig was bound to restore to the beneficiaries their part of the land, or to make good to them the amount of their loss. She could not retain the land and divest herself of responsibility by placing in the exclusive control of her partner in the wrong the fund substituted in its stead and which both of them held as trustees for these infant beneficiaries, although he assumed such control as their trustee in another capacity; nor could his acquittance, given her in their name as such trustee, operate as an estoppel in her favor against the parties upon whom the wrong had been committed and who had received no part of the fund and had in no other way ratified these transactions.

As to the effect of the receipt of a guardian for the proceeds of unauthorized or illegal sales, see *Cato* v. *Gen·try*, 28 *Ga.* 327, and *Groover* v. *King*, 46 *Ga.* 101. The latter case is cited by counsel for the plaintiff in error as holding that before the heirs can recover, they must account for the money received by the guardian, but an examination of the case will show that they are required to account only for so much of it as they have received themselves.

2. The judgment of the ordinary removing Clarke from the guardianship and directing him to pay over to his successor as guardian an amount found to be due by him to his wards, including the proceeds of the illegal sales, was rendered at the instance of a surety on his bond, and the children were not parties to it. They have collected nothing under the judgment, and have done nothing to ratify it in so far as it is a judgment in

their favor for this money. There is no ground upon which it can be treated as an estoppel against them in this proceeding.

3. The next question we are to consider is, whether the plaintiffs or any of them were barred by failure to sue within a reasonable time. The court below held that seven years after the coming of age of one who was a minor at the time of the illegal sale, is a reasonable time within which to sue for the recovery of land. Ordinarily this is true, and in this case we think the rule was properly applied. This court has said : "What should be held a reasonable time has not been settled by any fixed rule, and seems to depend upon the exercise of the sound discretion of the court, under all the circumstances of each particular case." *Fleming* v. *Foran*, 12 *Ga.* 594. Analogizing an action of this kind to other actions for the recovery of land held under color of title, any time within seven years after the illegal sale or after the removal of disability, is ordinarily not an unreasonable time. The present suit was commenced on July 7th, 1890, and the trial was had on the 10th of February, 1892. At the trial the only witness who testified as to the ages of the plaintiffs, stated that Wm. H. Clarke, the eldest of them, was "about thirty years of age," which would make him about seven years past his majority when the action was brought; but whether more than seven years or less, we cannot know from this testimony. Although under this testimony it was doubtful whether he had proceeded within the seven years, it did not affirmatively appear that he had not. The jury, under the charge of the court, found that he had brought himself within the rule, and the court below approved their finding. Under the evidence in the record, we cannot hold that they were wrong.

4. Newly discovered evidence was offered as to the ages of the plaintiffs, but it is not satisfactorily made to ap-

pear that at or before the trial proper diligence was exercised to obtain evidence on this subject, or that this testimony could not have been obtained by the exercise of such diligence.    It would seem that in the community in which these plaintiffs were brought up from childhood and in which the trial was had, their ages might have been ascertained and shown if proper effort had been made.    The court below did not err in overruling this ground of the motion for new trial.

5. There was no error in refusing a new trial, under the terms prescribed by the court.  *Judgment affirmed.*