## MOORE *et al.* v. CAREY *et al.*

## BENTLEY *v.* MOORE *et al.*

1. A purchase by an administrator at his own sale of any interest in the property renders the entire sale voidable at the instance of any one interested in the estate, who moves within a reasonable time to set aside the sale.

2. A wife may be a bona fide purchaser without notice from her husband, where he is dealing with the property as his own. It follows that while a purchase by an administrator at his own sale is voidable at the election of heirs or creditors of the estate, a deed made by him conveying the property to his wife for a valuable consideration vests the title in her, if she had no knowledge of the manner in which he acquired his title.

3. The guardian of a minor who is the distributee of an estate has no authority to consent that the administrator of the estate and others may purchase property of the estate at a given price ; and the fact that the administrator does so purchase the property and pays over to the guardian the part of the proceeds which would be due to the minor does not estop the latter from seeking to set aside the purchase by the administrator at his own sale, when the minor has had no settlement with the guardian and received no part of the proceeds of the sale so collected by him.

4. A plea claiming a set-off under the act of December 21, 1897, which provides that the value of permanent improvements placed upon the land by one who is in bona fide possession under an adverse title may be set off against the value of the land, if such permanent improvements exceed the value of mesne profits, is fatally defective where the allegations do not set forth with certainty the value of the permanent improvements alleged to have been placed upon the property.

5. When the defendant in a civil case introduces no evidence, he is entitled to the opening and conclusion of the argument.

6. In the trial of an action brought to set aside an administrator's sale upon the ground that he was a purchaser at his own sale, where it is sought to estop the plaintiff upon the ground that his guardian had collected from the administrator the amount due him as his portion of the proceeds of the sale, and had paid over the same to him after his arrival at majority, after putting him in full possession of all the facts in reference to the sale, testimony by the guardian that at the time of the payment by him to his ward it was stipulated by the ward that the payment of the money should have no other effect than to pass the fund into his possession, and he should not be concluded thereby from afterwards electing to restore the money to the administrator and to set aside the sale, was relevant.

Submitted May 1, — Decided July 23, 1902.

Complaint for land. Before Judge Hart. Taliaferro superior court. September 14, October 2, 1901.

*Cloud & Jennings* and *Colley & Sims*, for Moore et al.

*Samuel H. Sibley*, contra.

Cobb, J. Lee Anna Bentley and Martha J. Carey, a minor, the latter suing by her guardian, William A. Carey, brought suit against John D. Moore and his wife, Lizzie E. Moore, alleging that plaintiffs are the children of Martha Elizabeth Carey, who was the daughter of John R. Moore, deceased; that they are the heirs at law of their grandfather, and as such entitled each to a one-fourteenth interest in his estate; that John D. Moore was the administrator upon the estate, and as such caused a tract of land to be sold, and became himself the purchaser, and thereafter sold the land to his wife, Lizzie E. Moore, who had full knowledge of the fact that he was administrator and had bought the property at his own sale. The prayer of the petition was that the deeds under which the defendants Moore and wife claimed title might be cancelled, and that the plaintiffs recover a one-seventh interest in the property, with mesne profits. To this action the defendants filed pleas, which were in substance as follows: (1) The land sued for was sold at administrator's sale, as alleged. Before the property was sold, Moore, the administrator, who was also an heir at law and entitled to a one-seventh interest in the estate, agreed with six other persons, the father of both of the plaintiffs and guardian of the minor plaintiff being one of them, that they would bid in the land at the sale, if it did not bring a given price. The land did not bring this price, and under the agreement referred to the property was bid in by one Richards for the sum of $800. The persons for whom Richards bid in the property, not being able to resell the property, finally prevailed upon Moore to buy the property from them and take the same at the amount which Richards paid for the property. Moore agreed to do this, and in pursuance of this arrangement he as administrator conveyed the property to Richards, and Richards conveyed the same back to Moore individually, who accounted to the estate for $800, the amount of the bid. The arrangement before the sale was that Moore should not have any further interest in the property after the sale than the one-seventh which he would have been entitled to as an heir at law. (2) Lizzie E. Moore purchased the property from John D. Moore, her husband, who conveyed the same to her by a deed, and at the time of the purchase she had no knowledge, notice, or belief whatever that the plaintiffs claimed or would ever claim any interest in the property, nor did she have any notice that the title which Moore had to the land was either void or void-

able.    She bought the land in good faith, believing that John **D.** Moore owned the same, and without any notice whatever that the plaintiffs, or either of them, had at the time of the sale to her any interest, right, title, or claim in or to the property.    (3) William A. Carey was the duly appointed guardian of both of the plaintiffs during their minority, and represented them in the conferences and arrangements in reference to the sale, and as such guardian received from the administrator the portion of the purchase-price belonging to each of his wards; and Lee Anna Bentley, upon her arrival at majority, received her proportion of the proceeds of such sale with a full knowledge of all the facts, and this conduct on her part amounted to a ratification of the purchase by Moore of the property, even if it was illegal; and the receipt by the guardian of Martha J. Carey is binding upon her, although she is a minor. (4) Lizzie E. Moore is a purchaser in good faith and in adverse possession of the property, and since her purchase has expended a large sum of money in permanent improvements upon the property; and she prays that the value of the improvements may be set off against the mesne profits and the value of the land.

Attached to this plea is a long bill of particulars, consisting of items from August, 1895, to May, 1901, aggregating several thousand dollars, all claimed to be items of expense in connection with the permanent improvements alleged to have been placed upon the land.    Some of these items are such as would be clearly connected with permanent improvements, others are such as would clearly not be so connected, and still others are items of expense resulting from the ordinary and usual repairs upon a mill which was on the property. Some of the items are apparently disconnected with improvements, either permanent or otherwise, and a number of the items are for expenses incurred after the suit was filed, and represent improvements alleged to have been made since that time.    The plaintiff made an oral motion to strike all of the pleas above referred to, upon the ground that they presented no defense; and made special objection to the plea attempting to set off the value of improvements, upon the ground "that the same set up a mass of expenditures and was not so framed as to show any excess of improvements in value over mesne profits at the time of trial."    An order was passed striking all of the pleas except the one which alleged that Lee Anna Bentley had ratified the sale to Moore by receiving

her portion of the proceeds of the same, and the court submitted this issue to the jury. The jury returned a verdict finding in favor of Martha J. Carey for a one-fourteenth interest in the land and mesne profits, and a verdict in favor of the defendants so far as Lee Anna Bentley was concerned. Both Lee Anna Bentley and the defendants made motions for new trials, and both motions were overruled. The defendants filed a bill of exceptions, assigning error upon the refusal of the court to grant them a new trial, and upon exceptions pendente lite which had been duly filed to the striking of the pleas above referred to. Lee Anna Bentley excepted to the judgment overruling her motion for a new trial.

1. It is familiar law that a purchase by an administrator at his own sale, either by himself or through an agent, is voidable at the instance of any person interested in the property. It is not essential to the application of this rule to a particular case that the administrator should be the purchaser of the entire interest in the property. A purchase by him at his own sale of any interest in the property renders the same voidable. The same reasons which make a purchase by him of the entire interest voidable at the instance of those who are interested in the property would apply with equal force where he was at all interested in the purchase. In the present case the administrator being interested to the extent of a one-seventh interest in the purchase at his own sale, the temptation to look to the interest of himself and his associates rather than to the interest of the heirs and creditors of the estate would be just the same as if he was buying the entire property.

2. As to property rights a wife is in this State a separate and distinct person from her husband. While transactions between husband and wife are closely scrutinized where the rights of third persons are involved, we know of no reason why a wife may not occupy in law the attitude of a bona fide purchaser for value without notice from the husband. A husband may sell to his wife property owned by him; and if under similar circumstances a third person would be protected in law as a bona fide purchaser without notice, the wife will be protected. On account of the relation which they occupy to each other, however, slighter circumstances might be sufficient to negative good faith and want of notice than would be sufficient in the case of strangers. It has been held that a wife could not be a purchaser at a sale where the husband was the

representative of another and would himself be precluded from becoming a purchaser. *Reed* v. *Aubrey,* 91 *Ga.* 435. Mrs. Moore therefore could not have been a purchaser of the property at the administrator's sale by her husband. But if her husband was the purchaser of the property at that sale, she could become a purchaser from him ; and if she bought in good faith and for value and without notice of the manner in which he acquired his title, although that title was voidable as against the heirs and creditors of the estate which he represented, his deed to his wife under the circumstances above referred to would convey to her a good title. Mrs. Moore in her plea alleges, in substance, that she did not know that her husband was to be one of the purchasers at the administrator's sale by him; and if, after the title had vested in him under the deeds made following the sale, she bought the property from him, paying value for it, and was ignorant of the manner in which he acquired his title, her right to the property would be complete as against the heirs and creditors of the estate. The court erred in striking the plea in which Mrs. Moore set up that she was a bona fide purchaser without notice.

3. The court did not err in striking the plea which set up that the guardian of Martha J. Carey had not only agreed that the administrator might become one of the purchasers at the sale, but also received from him as guardian the proportionate amount of the proceeds of the sale which would be due to her as the heir at law of her grandfather. The guardian had no authority to consent that the property of his ward might be purchased by the administrator in this irregular way. The guardian had no right to sell the property of his ward at private sale ; and to consent that the administrator of the estate in which his ward was interested might purchase the property at the sale at a given price would be, in legal effect, a private sale of the interest of his ward. Having no authority to enter into this arrangement with the administrator, the mere fact that he afterwards received from the administrator the proportionate amount of the proceeds which fell to his ward would not estop her from seeking to set aside the sale at which the administrator was one of the purchasers. See, in this connection, *Groover* v. *King*, 46 *Ga.* 101; *Candler* v. *Clarke*, 90 *Ga.* 550, 556.

4. The plea attempting to set off the value of permanent im-

provements made by the defendants, against mesne profits and the value of the land, was properly stricken. This plea was an attempt to set up the right of set-off under the act of December 21, 1897 (Acts 1897, p. 79, Van Epps' Code Supp. § 6653), the plea alleging in terms that it was filed under the provisions of that act. The act provides that where an action is brought for the recovery of land, the defendant who has bona fide possession of such land under adverse claim of title may set off the value of all permanent improvements bona fide placed thereon by himself or other bona fide claimants under whom he claims, and in case the legal title is found to be in the plaintiff, if the value of the improvements at the time of the trial exceeds the mesne profits, the jury may render a verdict in favor of the plaintiff for the land and in favor of the defendant for the amount of the excess of the value of such improvements over the mesne profits. A plea under this act should set forth not only the value of the land and the value of the mesne profits admitted to be due, but also the value of the permanent improvements which it is claimed that the possessor has placed on the land. It is to be noted that the act does not provide for a set-off of the value of any improvements except of that class which is described by the term "permanent." The scheme of the act is that the verdict should find the value of the land at the time of the trial, and the plaintiff should have the right to have the land, subject to the payment to the defendant of the excess of the value of improvements over mesne profits, and in the event the plaintiff refuses to take the land upon these terms, then the defendant should have the right to take the land and pay to the plaintiff the value of the land and mesne profits. The plea must set forth the value of the land, the value of the permanent improvements claimed to have been placed upon the same, and the amount of mesne profits admitted to be due, because the verdict is required to set forth a finding in reference to all three; and a plea which fails to set forth the facts from which the jury can find the value of the improvements as well as the value of the land and the amount of mesne profits is not a sufficient plea under this act. Of course any improvements, although permanent in their character, which were placed upon the land after suit was brought to recover the same, can not be the subject-matter of set-off, either under the act of 1897, or under any other law. The plea in the present case

was fatally defective, for the reason that it failed to set forth the value of the permanent improvements. It is impossible to tell from the averments of the plea, taken in the light of the exhibits thereto, what is the value of the permanent improvements which were claimed to have been placed upon the land.

5. At the trial the defendant introduced no evidence, and the court, over the objection of the plaintiffs, allowed counsel for the defendant to open and conclude the argument to the jury. This ruling is assigned as error. Counsel insists that there is no law of force in this State which gives to a defendant in a civil case the right to open and conclude the argument to the jury in cases where no evidence is introduced in his behalf. It is said that the right of the defendant to open and conclude the argument in a criminal case when he introduces no evidence is given in Penal Code, § 1029, and that a similar right is given to the claimant in a claim case when no evidence is introduced in his behalf, under rule 13 of the superior courts (Civil Code, § 5644) ; and that there is nothing in the code which gives to the defendant in a civil case the right to open and conclude the argument simply because he introduces no evidence. The statement of counsel that there is nothing in the code in relation to the subject except the provisions above referred to seems to us to be correct ; for in our investigations we have been unable to find any provision in the code which in express terms declares that the failure to introduce evidence on the part of the defendant in a civil case gives him the right to open and conclude the argument. It has been, within the knowledge of some of the present members of this bench, the practice for more than forty years for the defendant to take the opening and conclusion of the argument when he introduced no evidence, and not within the knowledge of any of us has the legality of this practice heretofore been brought in question. In 1849 it was held by this court that when an equity case was submitted to the jury on the bill, answer, and replication, and the defendant introduced no evidence, he was entitled to conclude the argument before the jury. *Fall* v. *Simmons,* 6 *Ga.* 265 (1). This has been uniformly since that time recognized as the rule in equity cases. See *Ferguson* v. *Ferguson,* 51 *Ga.* 341 (5) ; *Cade* v. *Hatcher,* 72 *Ga.* 359 ; *Guess* v. *Granite Co.,* Id. 320. This court has also recognized that this is the proper rule of practice to be applied in civil cases other than equity and claim cases. *Arthur* v. *Com.,* 67

*Ga.* 221 ; *East Tenn., Va. & Ga. Ry. Co.* v. *Fleetwood,* 90 *Ga.* 23 (4). In 1852 the General Assembly recognized, as the existing practice in civil cases, that the defendant was entitled to the opening and conclusion where he introduced no testimony; for in that year an act was passed which declared : " The order of argument of counsel in criminal cases shall be the same as it now is in civil cases; that is to say, after the testimony is closed on both sides, the State's counsel shall open and conclude the argument to the jury, except in those cases in which the defendant shall introduce no testimony, but in that event the defendant's counsel shall open and conclude the argument to the jury after the testimony on the part of the State is closed." Acts 1851—2, p. 242. We have been unable to trace to its origin this practice. The right of the defendant to open and conclude the argument to the jury in cases where he introduces no testimony has been claimed in other jurisdictions, but the general rule seems to be that the defendant can secure the right to open and conclude the argument to the jury only in those cases where he pleads an affirmative plea, and thus relieves the plaintiff of the onus which rests upon him in all cases. See, in this connection, 17 Am. & Eng. Enc. L. (1st ed.) 209 ; 15 Enc. P. & P. 186—7; 1 Thomp. Tr. § 254; 2 Ell. Gen. Pr. § 543 ; Bailey's Onus Prob. 624; Worsham *v.* Goar, 4 Port. (Ala.) 441 (6). Without reference to what was the origin of this practice in this State, or whether the practice is founded upon sound reasons or not, we will not now disturb that which has been the uniform practice for more than half a century, which was expressly recognized by the General Assembly more than fifty years ago, and which has been allowed to prevail both by the bench and bar during that period of time.

6. Error is assigned, in Mrs. Bentley's motion for a new trial, upon the refusal of the judge to allow W. A. Carey, her guardian, to testify that when he paid over to her her part of the proceeds of the sale which he had collected from Moore, the administrator of her grandfather, it was stipulated that the payment from him to her of this amount should have no other effect than to transfer the fund to her possession, and that she receive the fund from him upon the express condition that her rights in the land which the administrator had bought should not be affected by her taking possession of the money. We think the court erred in refusing to admit this testimony. On the question as to whether Mrs. Bentley had ratified the purchase by the administrator at his own sale it

was necessary that it should be shown not only that she had full knowledge of all the facts, but that she accepted the money in full satisfaction of any claim or demand which she might have upon the administrator. The mere payment by her guardian to her of the money would not alone be sufficient to show that she received the same in satisfaction of her claim upon the administrator of the estate. If she afterwards retained the money and used it, or did any other act indicating her purpose to treat the amount received as a settlement of her claim, of course this would amount to a ratification; but if she simply received from her guardian the amount in his hands, and held it for the purpose of tendering it back to the administrator at the proper time, and did not use the same or exercise any acts of ownership over it to indicate that the amount was received in satisfaction of her claim against the administrator, and did subsequently tender the same back to him, then a finding that she had ratified the sale would not be authorized. This evidence should have been admitted in order that the jury might pass upon the question as to whether, after having been informed of all the facts in connection with the sale of the property in which she was interested, she elected to receive the money as her own and thus discharge the administrator from further liability, or whether after having arrived at age she received the money from her guardian simply that it might pass into her possession where it lawfully belonged, in order that she might thereafter herself deal with the administrator in reference to the fund instead of through the medium of her former guardian.

*Judgment in each case reversed. All the Justices concurring, except Lewis, J., absent.*