### CAREY, by next friend, *et al. v.* MOORE *et al.*

1. Where it was proposed to prove by a husband that " at no time had he and his wife intended to ratify and adopt " a sale to himself by an administrator of land in which the wife had an interest as heir at law, such testimony was rightly excluded by the court.
2. The undisputed evidence showing that one of the plaintiffs had ratified such sale, by acts defined in a former decision by this court in this same case, a nonsuit was rightly granted against such plaintiff.
3. Objections to the allowance of an amendment of the pleas of the defendants will not be considered when one of the plaintiffs has been rightly nonsuited and the other obtains a verdict of which no complaint is made.
4. It has not been made to appear to this court that the court below erred in the decree rendered.

Argued October 30, — Decided November 28, 1903.

Complaint for land.    Before Judge Lewis.    Taliaferro superior court.    February term, 1903.

*Samuel H. Sibley*, for plaintiffs.
*Hawes Cloud* and *Colley & Sims*, for defendants.

TURNER, J.    This litigation has heretofore been before this court, and a new trial was granted.   See a statement of the case in 116 *Ga*. 28, together with the rulings then announced.   On the last trial of the case in the superior court, amendments to the pleas of the defendants were offered and allowed over the plaintiffs' objection.    During the trial the plaintiffs offered to prove by J. O. Bentley, husband of Lee Anna Bentley, that at no time had he and his wife intended to ratify and adopt the sale of the land in dispute to the administrator, but throughout had intended to rescind said sale and recover her interest in the property ; which testimony the court excluded as irrelevant and illegal.    When the introduction of evidence in behalf of the plaintiffs had been concluded, the court, upon motion of the defendants below, granted a nonsuit as to Lee Anna Bentley, on the ground that she had barred herself of the right to recover.    To these several rulings the plaintiffs ex-

cepted pendente lite, and the questions are brought here in a regular bill of exceptions.

1. It is obvious that what Mr. Bentley himself may have intended in regard to the administrator's purchase at his own sale could have no relevancy to the case on trial, Mr. Bentley being, in law at least, a stranger to the litigation. Nor was it competent for him to testify to his opinion as to what his wife may have intended. We therefore think this testimony was rightly excluded.

2. When this case was here before, this court held that if Mrs. Bentley "retained the money and used it, or did any other act indicating her purpose to treat the amount received as a settlement of her claim, of course this would amount to a ratification; but if she simply received from her guardian the amount in his hands, and held it for the purpose of tendering it back to the administrator at the proper time, and did not use the same or exercise any acts of ownership over it to indicate that the amount was received in satisfaction of her claim against the administrator, and did subsequently tender the same back to him, then a finding that she had ratified the sale would not be authorized." (See page 36 of the volume above cited.) It appears from the testimony recited in the exceptions pendente lite that the guardian of Mrs. Bentley delivered to her her share of the proceeds of the land purchased by the administrator at his own sale, and settled with her and her husband; that they had previously discussed the question of her repudiating that sale, and it was understood that she would undertake to recover her interest in the property, and the settlement would be only of what was in the guardian's hands, and to pass it from his hands to theirs. He testified that he did not remember that anything was said about this arrangement on the day the settlement occurred. J. O. Bentley, the husband of the plaintiff Mrs. Bentley, stated, in effect, that he and his wife both signed a receipt for the money; that they had before discussed the sale of the property and had decided to sue for her interest in it, and his recollection was that this matter was mentioned at the time of the settlement. He further testified that he and his wife got from the guardian a half interest in a place near Sharon and $25 in money; that they still held this land, and that the $25 went into other land purchased by them. It also appears that the land she received from her guardian on settlement with him

had been purchased by him for his wards with money he had received from the administrator as their shares of the proceeds of the administrator's sale. It was also shown that Lee Anna Bentley had reached her majority; that no actual tender to the administrator, Moore, had been made by her of the share allotted to her of the proceeds of the sale of the land of her grandfather, but that the same had been invested, as hereinbefore stated, in the land received from her guardian, as also in the other land into which she put the $25 she received from him; and that she still had the land. Taking the rule laid down by this court in this case when it was here before, as above recited, it would seem that Lee Anna Bentley was rightly and conclusively presumed to have ratified the sale by the administrator to himself of the land of her grandfather. The nonsuit was therefore right.

3. As to the objection to the amendment proposed by the defendants to their pleas, it is sufficient to state that as Lee Anna Bentley is no longer in the case, and as W. A. Carey, guardian of Martha J. Carey, the remaining plaintiff, does not ask a new trial, no consideration of this objection is necessary.

4. It seems that in instructing the jury as to their verdict, the court submitted to them certain questions framed under the rule in equity cases and based on the statute which allows them to find a special verdict on the facts only. It is to be presumed that these questions were framed in accordance with the rule, and no error is assigned on the refusal of the trial judge to adopt any question proposed by either side, nor is there any complaint of any omission whatever in adjusting proper questions to the case. It is also to be noted that there is no assignment of error as to any failure of the jury to properly answer these questions, nor is there any exception based on uncertainty in the verdict. Nor does it appear that when the verdict was returned, any objection was made to it, or that the court was asked to require the jury to amend their verdict so as to render it free from uncertainty. The questions submitted to the jury and the answers made to the same were as follows: "1st. Was the defendant, Mrs. Moore, a bona fide purchaser from her husband of the property in dispute, for a valuable consideration, without notice of any defect in the title of her husband?" Ans. "No." "2nd. Was the possession of the defendant, Mrs. Moore, under the deed from her husband a bona

fide possession under an adverse claim of title ?" Ans. " No." " 3rd. What is the value of the property at the present time ?" Ans. " $2,000." " 4th. What amount represents the enhanced value of the property by reason of any improvements of a permanent or substantial character placed on the property while in possession of defendants, and *now* there ?" Ans. " $1,200." " 5th. What is a reasonable amount chargeable to the defendants as mesne profits — that is, a reasonable rent or profit of the property while in possession of defendants ?" Ans. " $150 per annum."

It is recited in the bill of exceptions that the trial judge gave to the jury appropriate instructions as to the act of 1897, for the set-off of improvements made in good faith where the possession of land recovered has been held bona fide, and also as to section 5087 of the Civil Code, as applicable when the possession has not been such as contemplated in the act of 1897. Upon the verdict the court decreed a recovery by the plaintiff Carey of her undivided interest in the land, without mesne profits, and she excepted to the decree and alleged that it should have included a finding in her favor for her proportionate part of the mesne profits found by the jury. It is also to be remembered that the plaintiffs' petition concedes that the defendant Moore, administrator, who is alleged to have bought the land in dispute at his own sale, had paid to the several heirs their shares of the price paid for the land, to wit, $800 ; and the petition also proposed to pay back to the defendants the proportion of said purchase-money received by the two plaintiffs, including the plaintiff Carey. This being an undisputed item necessary to the determination of this case, the trial judge, it is to be presumed, considered it in framing the decree. His honor had presided on the trial, had instructed the jury as to the questions involved, had the pleadings before him, and was better capable of determining what decree should be rendered under the circumstances stated. We are not sure this court could have done better had it sat in the place of the superior court. In the light of the verdict rendered, it may be that other and fitter questions ought to have been framed to elicit from the jury whether their finding of mesne profits was based on their estimate of the income from the property as improved. It may also be a question as to whether they had in mind that provision of section 5087 of the Civil Code, which provides that, in allowing a trespasser to set off improvements

against mesne profits, they can not diminish the amount of the recovery of mesne profits below the sum which the premises would have been worth without such improvements. There are no recitals in the decree which indicate the process by which the judge reached his conclusion as to mesne profits, or how he applied to the use of the defendants a proper allowance of the purchase-money Moore paid for the land. No motion was made for a new trial, and no complaint of any kind is made as to the form of the verdict or as to its sufficiency. As the verdict will stand, we will let the decree stand also.

In the brief filed by counsel for the plaintiffs in error, it is recited that the jury appended to their answer to the fifth question a finding of $59.59 for the plaintiff Carey, and it is stated that the judge treated this finding as surplusage. We fail to discover this finding in the transcript of the record or in the bill of exceptions, and therefore can not consider it.

*Judgment affirmed. All the Justices concur.*