BURRUS & WILLIAMS, plaintiffs in error, *vs.* KYLE & COMPANY, defendants in error.

1. The discretion of the court in refusing to allow leading questions on cross-examination, will not be controlled unless abused; especially where the witness is one of the parties to the suit in whose interest the questions are propounded.

2. Where cotton was delivered by a debtor to an agent of factors, and placed upon their drays to be transported to their warehouse, their lien for advances, etc., at once attached, and was superior to the lien of an attachment levied whilst the cotton was in process of transportation to such warehouse.

Witness.    Practice in the Superior Court.    Factor's lien. Attachment.    Before Judge CRAWFORD.    Muscogee Superior Court.    November Term, 1875.

Reported in the decision.

LITTLE & CRAWFORD, by brief, for plaintiffs in error.

PEABODY & BRANNON, for defendants.

WARNER, Chief Justice.

This was a claim case, on the trial of which the jury, under the charge of the court, found the property subject to the attachment levied thereon.    The case comes before us on a bill of exceptions to the rulings of the court during the progress of the trial, and to its charge to the jury.    It appears from the evidence in the record that on the 30th of September, 1874, the plaintiffs' attachment was levied on six bales of cotton as the property of Reese, the defendant therein, which was claimed by Burrus & Williams, cotton factors and warehousemen, in the city of Columbus.    It also appears from the evidence that Reese lived in the state of Alabama; that he was indebted to the claimants $600 00 or $700 00 for advances made to him to make his crop for the year 1874, they having a mortgage on his crop to secure the payment thereof.    Some time previous to the day on which the attachment was levied, the claimants had requested Reese to send forward his cotton, which he promised soon to do.    On the morning of the 30th of September, 1874, Reese informed the claimants that he had six bales of cotton coming through the country, which would arrive in the afternoon of that day, the same being part of his crop, and proposed to pay the same to the claimants on account of his indebtedness to them, and said that he had learned that one Murphy had threatened to levy an attachment on his wagons and teams to satisfy a demand that was unjust, if he brought them on the Georgia side of the river.    It was then agreed between Reese and the claim-

ants that on the arrival of the cotton in Girard, Alabama, they should send their drays over there and he would deliver to them the six bales of cotton, which they were to sell, and put the proceeds of sale to account of his indebtedness to them for the year 1874, which indebtedness exceeded the value of the cotton. The claimants sent Tilman, with their drays, over on the Alabama side of the river, and the cotton was delivered to them, and placed on their drays and brought across the river, and when on its way to their warehouse, was levied on by virtue of the plaintiffs' attachment. The delivery of the cotton was made in pursuance of the agreement made with Reese in the morning, that claimants were to sell it, and credit Reese with the proceeds thereof, and were to account to him by notifying him of the amount thus credited; claimants knew nothing of plaintiffs' attachment until it was levied. Reese testified that he was indebted to the claimants $600 00; the debt was contracted in June, 1874, for provisions to run his farm, and was secured by a mortgage lien on the cotton; that he paid the claimants six bales of cotton on his indebtedness to them on the 30th of September, 1874, in Alabama, having promised to pay them with the first cotton he made; the payment was made previous to the arrival of the cotton in Georgia; that at the time the cotton was attached by the plaintiffs it belonged to the claimants, and was in their possession, he having delivered it to them in Girard, Alabama, and it was put upon their drays there, was transferred from his wagons to the claimants' drays; that he had no knowledge of the plaintiffs' attachment at that time. Tilman testified that he was in the employment of the claimants, and by their directions went over the river with the drays and received the cotton for them from Reese's wagons, and brought it on this side of the river, when it was levied on by plaintiffs' attachment. The plaintiffs in attachment having disclaimed any right to recover on the ground of any fraud in the transfer of the cotton between defendant and claimants, the court charged the jury: "If you believe from the evidence that the six bales of cotton were received by Burrus & Williams, the claimants, and were by

Burrus & Williams *vs*. Kyle & Company.

them to be sold, and the amount received therefor was to be credited on Reese's account when so sold, and that whilst the cotton was on its way to their warehouse, and before this was done, the attachment was levied, then the cotton would be subject, because in such a case as that they would only be the agents of Reese to sell, and when sold, then they could appropriate the proceeds to the payment of his account. But, if the value of the cotton was agreed on, and it was delivered as a payment, and nothing remained to be done, except to ascertain the weights, then the payment was a good one, and it is the property of the claimants, and not subject to the attachment, it being necessary that the price should be agreed on to make it a payment." It appears from the bill of exceptions that on the cross-examination of Williams, the plaintiffs' witness, the claimants counsel proposed to ask him the following question: " Was not the agreement between you and Reese that you were to take the cotton and credit it upon Reese's indebtedness to your firm ?" The claimants' counsel also proposed to ask the same witness, on his cross-examination, the following question: " Who was the owner of the cotton at the time it was levied on ?" The court refused to allow the questions to be answered by the witness as propounded, but stated he would allow the counsel to ask the witness what was the agreement between the witness and Reese touching the six bales of cotton levied on, and would also allow the witness to state all the facts connected with the ownership of the cotton, whereupon the claimant excepted.

1. We find no error in the refusal of the court to allow the questions propounded to the witness to be answered, but think the discretion of the court was properly exercised under the provisions of the 3865th section of the Code, the more especially as the witness was one of the parties to the suit.

2. But in our judgment the charge of the court to the jury was error, inasmuch as it ignored the claimants' lien on the cotton or its proceeds, as factors in *possession* thereof. The claimants were factors and warehousemen, and Reese, the defendant, was indebted to them for advancements made by

them to him as factors and warehousemen. The delivery of the cotton to Tilman, their agent, by Reese, in Girard, and the placing it on the claimants' drays, to be hauled to their warehouse, was, in contemplation of the law, a delivery to them, and they were in possession of the cotton as factors and warehousemen who had made advances to Reese to enable him to make it: *Elliott vs. Cox,* 48 *Georgia Reports,* 39 ; *Hardeman & Sparks, vs. DeVaughn,* 49 *Ibid.,* 596 ; *Clark & Cole vs. Dobbins,* 52 *Ibid.,* 656. The claimants, as factors and warehousemen, had a lien on the cotton in their possession not only for the expenses incurred by them in handling it, but also for all balances due to them by Reese on general account: Code, section 2111. The evidence in the record is that the indebtedness of the defendant, Reese, to the claimants for advances made by them to him, exceeded the value of the cotton.

Let the judgment of the court below be reversed.