Cade, trustee, *vs.* Hatcher *et al.*

CADE, trustee, *vs.* HATCHER *et al.*

[Blandford, Justice being disqualified, did not preside in this case.]

1. Leading questions are generally allowed only in cross-examinations, but the court may exercise a discretion in granting that right to the party calling the witness, and in refusing it to the opposite party, when, from the conduct of the witness, justice requires it; and this discretion will not be controlled, except in an extreme case, although the witness called may be one of the opposite parties to the case.

(*a.*) While, in this case, the court in terms refused the privilege of asking leading questions of the witness, yet it appeared that many such questions were, in fact, asked and answered without objection.

(*b.*) Leading questions may be propounded in a bill for discovery.

(*c.*) Where discovery is sought and had by bill in equity, if the complainant afterwards places the defendant on the stand as a witness, *semble*, that he does so on the same terms and subject to the same conditions as in the case of indifferent parties.

(*d.*) The answer of one defendant is evidence for another only when it states facts against his own interest, and in favor of that of his co-defendant. Generally, it is not evidence against his co-defendant.

2. Where the defendant to a bill introduces no testimony, he has the right to open and conclude the argument.

(*a.*) On the trial of a bill praying discovery, the defendants were not compelled to offer their answer in evidence in order to rely upon it. When discovery was had according to the prayer, defendant became complainant's witness.

(*b.*) The fact that counsel for the defendants announced that they considered the answer in evidence, amounted only to a statement that they would rely upon such answer, and did not take away the right to open and conclude.

3. The *gravamen* of a bill being that the estate of a decedent had been divided, with a view to dissipate and conceal the widow's interest by distributing it among her children, and thereby to defeat the collection of complainant's claim against her, when it appeared that the widow had received, as part of her share, an interest in a debt on one of the distributees, or a debt on a firm of which he was a member, no recovery could be had in favor of the complainant against him on account of such indebtedness, without pleadings for that purpose, and without giving him an opportunity to defend such a claim; and such matter does not appear to have been pertinent to the issue.

March 11, 1884.

Practice in Superior Court. Equity. Witness. Discovery. Pleadings. Before Judge WILLIS. Muscogee Superior Court. November Adjourned Term, 1882.

Cade, trustee, filed his ·bill against B. T. Hatcher, S. B. Hatcher, Susan A. McMichael, formerly Hatcher, Paytona Hunt, formerly Hatcher, and Marshall J. Hatcher, alleging, in brief, as follows : Samuel J. Hatcher died in 1861, leaving a will, by which he devised the whole of his estate to the defendants and his wife, Mrs. Elizabeth Hatcher, and appointed the latter as his executrix. In 1871, complainant obtained a judgment against Mrs. Elizabeth Hatcher for $1,438.73, besides interest. This judgment was against Mrs Elizabeth Hatcher, Seaborn McMichael and James McMichael; but the latter two were insolvent, became bankrupts, and were discharged. At the time of the death of S. J. Hatcher, he left a large estate, and after the losses caused by the war, the share of each distributee was about $10,000.00. Defendants combined with Mrs. Hatcher to hinder, delay and defraud complainant, and to defeat the collection of his debt, and for that purpose they had a pretended division of the estate. But though Mrs. Hatcher was entitled to one-sixth interest, they only divided the estate into five shares, and each of the defendants took a share, with some secret understanding that they were to support Mrs. Hatcher during her life. Subsequently, Mrs. Hatcher died intestate, leaving no property. There has been no administration, but save for the wrongful practices of defendants, she would have left an estate of from $15,000.00 to $20,000.00. Defendants took possession of all the property left by her husband after the debt to complainant had been incurred. Complainant caused an execution to issue on his judgment, and it was levied on certain property which had belonged to S. J. Hatcher at the time of his death, but a claim was interposed by S. B. Hatcher and Mrs. Hunt, which was finally tried at the April term of court, 1881, when complainant learned

from the testimony, then given, the facts on which this bill is predicated. The prayer was for discovery; that the defendants be required to contribute to the payment of complainan.'s debt, and for subpœna and general relief.

S. B Hatcher, B. T. Hatcher and Mrs. McMichael pleaded that garnishments had been served upon them to answer what they owed Mrs. Hatcher; that they had answered nothing; that this answer had been traversed, and on the trial, the garnishments were dismissed by complainant; and defendants insist that this judgment bars the present bill.

The defendants also pleaded the statute of limitations, alleging that the estate of S. J. Hatcher was divided in 1868, and since that time, each distributee has been in possession of his or her distributive share; that at the time of the division, complainant's note was not due, and its existence was unknown to defendants; nor was there any suit or judgment, and judgment was not obtained until April, 1871; that the note was given by McMichael & Company, composed of S. W. and James M. McMichael and Robert Jones, and was signed by Mrs. Hatcher as security; that pending, suit on the note, Jones died, and complainant dismissed the case as to him, though he left an estate fully able to pay the debt, and a verdict was taken against the McMichaels and Mrs. Hatcher; that the McMichaels were solvent at that time, and did not become insolvent until 1875, but complainant nevertheless caused the execution based on the suit to be levied on this property, to which S. B. Hatcher and Mrs. Hunt interposed a claim; that complainant dismissed his levy, and again levied in 1872, and another claim was interposed; that this claim was tried in 1875, 1878 and 1881, and on each trial the evidence showed the entire division of the estate and the share received by each distributee, and complainant knew all of these facts, and is now barred by his own *laches* in filing this bill.

The answer of defendants denied all fraud, collusion or

effort to defeat complainant's debt, and alleged that a fair and full division of the estate of S. J. Hatcher had been made; that Mrs. Hatcher had received a one-sixth interest, which she took in the shape of two claims, one on Mc-Michael & Company for $2,500.00, which had previously been loaned to them, and which she considered good and solvent paper, but which subsequently became insolvent; the other, an interest in claim on the firm of Redd & Hatcher, of which M. J. Hatcher was a partner; that Mrs. Hatcher, as executrix, had loaned to Redd & Hatcher a considerable sum of money, amounting to about $17,-000.00, which was considered a good and solvent claim; that M. J. Hatcher's share in the estate was allowed to him out of this claim, and the balance was taken as part of her share by Mrs. Hatcher; that the remainder of her share was paid to her in money, but from business losses she failed to collect this debt, and from this and her own personal expenses, etc., her share in the estate was lost and absorbed. Defendants deny any sort of agreement to support Mrs. Hatcher for life, but assert that what they did was only through filial regard for her. The remainder of the answer need not be set out; nor is it necessary to detail the evidence.

The jury found that the division was in good faith, and that Mrs. Hatcher received as her share $2,500.00 in the shape of a note on McMichael & Company, one note on William Redd, Jr., and M. J. Hatcher, and some money; that Mrs. Hatcher left nothing visible at her death, and defendants received nothing from her estate, and that complainant or his attorney first knew of the division of the Hatcher estate in 1872.

Complainant excepted, and assigned the following errors:

(1.) Because the court refused the request of complainant's counsel to be allowed to put leading questions to S. B. Hatcher, one of the defendants, whom complainant swore as a witness.

Cáde. trustee, *vs.* Hatcher *et al.*

(2.) Because the court held that counsel for defendants had the right to open and conclude the argument, though the complainant put in the answer ot defendants to the bill as evidence. [From the report of the evidence contained in the bill of exceptions, it appears that at the close of the testimóny for complainants, his counsel said to counsel for the defendants, "You put in his evidence or the answer ?" To which counsel for defendants replied, "Yes, sir, I have put it in."]

(3.) Because the court refused to enter a decree against Marshall J. Hatcher for th amount of complainant's claim against Mrs. Hatcher.

L. F. GARRARD; PEABODY & BRANNON, for plaintiff in error.

W. A. LITTLE, for defendants.

HALL, Justice.

Three questions are made by this record:

(1.) Did the court err in refusing to allow leading questions to be put to Samuel B. and Benjamin T. Hatcher, who were defendants in the bill, but who were sworn as the complainant's witnesses, upon their direct examination by the complainant.

(2.) Was there error in refusing to allow the complainant to open and conclude the argument to the jury, when the defendants had put in no evidence, except such as was contained in the answers they were required to make to complainant's bill?

(3). Did the court err in refusing to enter a decree against the defendant, Marshall J. Hatcher, when the jury had found all the issues of fact submitted to them on the trial in favor of all the defendants, including the said Marshall J.?

1. Leading questions are generally allowed in cross-examinations, and only in these; but the court may exercise

a discretion in granting the right to the party calling the witness, and in refusing it to the opposite party, when, from the conduct of the witness, or other reason, justice requires it. Code, §3865. In *Hayden vs. The State*, 20 *Ga.*, 155, after stating the general rule, as above, the judge delivering the opinion declared that "the case in which this court would touch the superior court's judgment, allowing or not allowing a leading question to be asked, would be an extreme one." Leading questions may be put to a witness, who shows reluctance to answer, by the party calling him. 41 *Ga.*, 507 (3 head-note). This is unquestioned, where the witness called is not a party to the suit; but it is urged that the rule is inapplicable, where the opposite party is made a witness. This point seems to have been ruled the other way by this court in 56 *Ga.*, 24, 27, where it was held that the discretion of the court in refusing to allow leading questions on cross-examination would not be controlled unless abused, especially where the witness was one of the parties to the suit in whose interest the questions were propounded. While in the present case the court in terms refused the privilege of asking leading questions to the witness, who was one of the opposite parties to complainant calling him, yet the record shows that many such questions were, in fact, propounded and answered without objection. But this case is, in point of fact, distinguishable from any of those above cited in two particulars: 1st. The witness called was only one of several parties, defendants to the suit, and the interests of all the co-defendants, as well as those of the one testifying, were liable to be affected by this unusual mode of examination. 2d. One of the purposes of the bill was a discovery from each of the defendants. Numerous interrogatories had been propounded to them, and in answer to these, a full discovery had been obtained, which, we must infer, was satisfactory, inasmuch as no exceptions were filed to any of the answers. That leading questions may be propounded

in such bills is undeniable; this is, in fact, the usual practice. Story's Eq. Plead., §§34–39, inclusive.

In England, and in some of the American states, where parties have not only been made competent, but are compelled by statute to testify in their own cases, this requirement has been held to repeal the auxiliary jurisdiction of courts of equity to compel discovery; indeed, in several of them this jurisdiction is abolished by express enactment, while in others, as in this state, it is expressly retained. 1 Pomeroy's Eq., §§93, 193, 190, 215; Code, §§3101, 3103, to 3106, inclusive; as to discovery at law, 17 *Ga.*, 111; Code, §§3810, 3811, 3812. This legislation reserves, in express terms, " the right of cross-examination as in other cases." When, therefore, the right to this discovery is sought, as in this case, by bill, and is had, it would seem that if the party afterward places the defendant on the stand as a witness, he does so upon the same terms, and subject to the same conditions, as in cases of indifferent parties. By seeking the discovery by bill and interrogatories, he makes the defendant a witness for himself, as well as for the party propounding the interrogatories to make the discovery full. It may be otherwise, and upon principle doubtless is, where this change in the law of evidence abolishes the jurisdiction, and is, consequently, a full substitute therefor.

By express provision of the Code, §3107, the answer of one defendant is evidence for another only when it states facts against his own interest and in favor of his codefendants. Generally, it is not evidence against his codefendants. 13 *Ga.*, 206; 26 *Id.*, 537; 32 *Id.*, 418, 219.

2. Where the defendant to the bill introduces no testimony, it is his right, under the law, to open and conclude the argument to the jury. *Guess et al. vs. Stone Mt. G. and R. R. Co.*, decided at this term. The defendants were not compelled to offer their answer, in order to rely upon it as evidence in their favor. The tender made in this instance amounted to nothing more than a notification to the opposite counsel that they should treat it as testimony,

and was wholly unnecessary. When discovery is had according to the prayer, the defendant becomes the complainant's witness, and he cannot "turn his back" on the testimony. 57 *Ga.*, 583; 2 Story Eq. Jur., §1528.

3. The *gravamen* of complainant's bill was, that the division of Samuel J. Hatcher's estate among his legatees was made with a view to dissipate and conceal Mrs. Hatcher's interest therein, by distributing it among her children, and thereby to defeat the collection of complainant's claim against her. This issue was submitted to the jury, and they found it in favor of the defendants. Marshall J. Hatcher received his share of the estate in a debt the executrix held against him and one Redd, who was his partner. The balance of this large debt was taken by Mrs. Hatcher in part of her share, as was also a debt upon a firm, of which her son-in-law was a member. She had a right to take both these claims as she did. It was her misfortune that she lost them. There is no phase of this bill under which an individual liability of Marshall J. Hatcher to his mother could have been decreed to the complainant. Such a decree would have been outside of the allegations and prayers in the bill. No opportunity had ever been afforded him to show that he was not indebted to her at the time of her death or since.

The statute of limitations was pleaded to the only claim set up, and was found in favor of the defendants. The jury also found, in effect, that she left nothing to be administered, by finding that she died without visible property. During the years that elapsed between the division of the testator's estate and her death, Marshall J. Hatcher may have settled with his mother his indebtedness to her, and the legal presumption is, from the lapse of time, that he did so. At all events, no decree, even if the matter had been pertinent to the issue made, and it does not appear to have been so, could have been rendered without calling on him and giving him an opportunity to be heard in relation thereto.

Judgment affirmed.