HAAS *v.* THE OLD NATIONAL BANK OF EVANSVILLE.

1. A regular customer of a bank in the State of Indiana having consigned goods by railway to a point in Georgia, and taken a bill of lading showing on its face that he was the consignor and another

| 91 | 307 |
| 93 | 486 |
| 91 | 307 |
| 96 | 258 |
| 96 | 815 |
| 91 | 307 |
| 100 | 623 |
| 91 | 307 |
| 112 | 816 |
| 91 | 307 |
| 122 | 822 |

person the consignee, and having drawn a negotiable bill of exchange payable to the cashier of the bank of which he was a customer, the bill being drawn on the consignee of the goods for the purchase price thereof, and having deposited with the bank this bill with the bill of lading attached and procured the bank to enter the amount to his credit under circumstances which would entitle him to draw upon the bank at once for the proceeds; from these facts a jury would be legally authorized to infer that the intention was to make an equitable assignment from the consignor to the bank of the fund representing the price of the goods, and it was not error to refer to the jury the question as to whether such was the intention or not.

2. The real owner of a fund deriving his title through an equitable assignment, may assert his right thereto by claim under §3541 of the code against an attaching creditor of the assignor whose attachment has been served by summons of garnishment.

March 3, 1893.

Before Judge MacDonell.    City court of Savannah. July term, 1892.

Haas having obtained judgment on attachment against the Melrose Milling Company and caused process of garnishment to be served, the Old National Bank of Evansville, Indiana, interposed its claim to the funds in the hands of the garnishees.    The jury found in favor of the claimant, and the plaintiff excepted to the refusal of a new trial.    The following appears from the evidence:

The milling company sold flour to each of the garnishees, the sum of the two bills being $1,275, and the terms of sale being, the giving of an acceptance due at thirty days, or one per cent. off for cash.    The flour was shipped on August 15, on which day the company drew ordinary thirty day drafts for the purchase price, payable to the order of the cashier of the claimant bank, and attached thereto the railroad receipts or bills of lading for the shipments, on which the garnishees' names were written as the consignees.    These papers were delivered to the bank, and it discounted the drafts on August 18, and forwarded them for acceptance.

On August 22 the garnishments were served, and the garnishees for that reason declined to accept the drafts when presented. At this time they had received the flour from the terminal carrier. The shipments were direct or open, not order shipments. The consignees did not need the bill of lading to get the flour when it arrived. In an order shipment the bill of lading states that the goods are consigned to "shipper's order," with a direction to the last carrier to notify the purchaser, who, in such case, cannot get the goods without having the bill of lading. A witness testified: "If I handed a bank a bill of lading showing that I had shipped 150 barrels of flour to somebody in the country direct, I could not borrow a dollar on it; if it was shipped the other way, I could."

The cashier of the bank testified: The bank often discounted for the milling company its local paper and drafts made against shipments as the drafts in this case. The proceeds of the drafts were placed to the credit of the company on the day of the discount, August 18, 1891. The transaction with the company in the discount of the drafts was *bona fide* and in the usual course of business, and the bank became thereby the owner of the drafts and bills of lading attached thereto. The company never refunded any part of the proceeds of the drafts. It has had an account with the bank since its organization in December, 1884. It was and is solvent; its credit was high in the bank in August, 1891. The paper referred to was discounted as other commercial paper, and reliance for payment was upon the consignees and the property represented by the bills of lading. The balance in the bank to the credit of the milling company was $5,828.21 on August 18, and $936.06 on August 25, 1891, when notice was received of the protest of the drafts. The average daily balance to the credit of the company during that and the next

month was between $1,000 and $1,100. The company
was able to pay the drafts on August 25, and the bank
did demand payment, which the compay refused. The
amount paid by the bank upon the drafts has never been
refunded by the company, although demand was made
before and after the 18th of August, 1891, and payment
refused in each instance. The bills of lading attached
to the drafts became the property of the bank by de-
livery; this was the customary and usual method of the
transaction of business between the milling company
and the consignees; a number of previous similar ship-
ments were made under the same conditions, under
similar bills of lading, and the purchase price of the
flour was represented by a draft, and was in all of said
instances, including the transaction in controversy, rep-
resented by a draft upon consignee for the amount of
the shipment, and said drafts discounted by the bank,
whereby affiant is advised the bank became the owner
of the bill of lading, and was, so far as the milling
company and any of its creditors were concerned, en-
titled to the property and its proceeds; and the drawing
of the draft and the discounting of it by the bank was
an assignment by the company of its claim for the price
of the shipment. The company does and has done a
large business with the bank before and since August,
1891. It has not been and is not, nor is any of its mem-
bers, an officer, director or stockholder in the bank. Its
relations with the bank are such as usually exist between
such clients and the bank, and no assurance exists that
the bank shall be protected against loss if the full pay-
ment of the drafts is not secured from the consignees,
together with fees, expenses and damages in the prose-
cution of this suit.

The motion for a new trial alleges that the court
erred in refusing to charge the jury that the drafts, not
having been accepted by the drawees, did not operate

as an assignment of the claim of the milling company for the purchase money of the flour; that until the acceptance in writing of a bill of exchange, there is no liability on the part of the drawees; that the mere delivery of the bills of lading did not assign the property mentioned therein, but they must be assigned in writing; that in these bills of lading the obligation of the carrier was to deliver the goods to the consignees, and that the consignor retained no control of the property save the general right of stoppage *in transitu* in case of insolvency of the consignees, who had the legal right to receive the flour from the carrier. Other grounds complain of error in the court's charge, in leaving to the jury to find as a matter of fact, from all the circumstances, what was the intention of the parties in regard to the assignment of the claims against the garnishees, the question being one of law and not of fact upon the papers presented, there being no ambiguity to be explained by parol. The court charged, among other things, that a draft for the exact amount of a debt, with a bill of lading attached to it, showing the property against the purchase money of which it was drawn, would be a valid assignment, if *bona fide* and for value, provided the jury could gather that it was the intention of the parties to draw a draft on that particular fund, and to convey their right, title and interest in that fund, the cardinal rule being to find from all the evidence whether the intention of the parties was to sell and convey the claim. Also, that, the drafts being on their face ordinary bills of exchange based on the general credit of the drawer and not on any particular fund, if the jury could not ascertain from extrinsic evidence that was manifest in writing at the time, or from the facts and circumstances surrounding the transaction, that it was the intention of the parties to actually transfer the title to the accounts, it would not operate as a valid

transfer of the same, and the funds should be found subject to the garnishments. But that if the drafts were given *bona fide* and for a valuable consideration, and if from all the circumstances of the transaction, taken in connection with the bill of lading, the jury were able to gather to a certainty that it was the intention of the milling company to transfer to the bank all of its right, title and interest in the accounts against the garnishees, that would make it a valid transaction, in which event the jury should find the funds not subject.

GARRARD, MELDRIM & NEWMAN, for plaintiff.

CHARLTON, MACKALL & ANDERSON, *contra.*

BLECKLEY, Chief Justice.

1. According to reason and justice, as well as the spirit of the best authorities on the subject, what transpired in Indiana between the Indiana bank and its customer would amount to an equitable assignment from the latter to the former, if these parties mutually intended that the bank should thereby become substantial and beneficial owner of the particular fund which represented the price of the goods for which the bill of exchange was drawn. There was much more to indicate such an intention than the mere drawing, delivery and discounting of the bill. Had this been all, no assignment of the fund, legal or equitable, would have resulted. But from this, together with the attachment of the bill of lading and the entry of the amount to the credit of the consignor, he being a regular customer of the bank, and the circumstances being apparently such as that he had a right to draw at once upon the bank for this amount, without waiting for the bill to be collected, it could well be inferred that the intention was to make the bank the substantial owner of the fund, not only from the time it should be realized by collection, but from the time the bill was deposited and credit for it

given on the books of the bank to the depositor. Although the bill was not drawn expressly on any particular fund, but was an ordinary negotiable bill of exchange, a consideration of prime importance is that the attachment to it of the bill of lading, the latter specifying a particular consignment of goods, and the former being drawn for the price of these goods, might serve, as matter of evidence, to specialize and identify the particular fund as the one really drawn upon according to the mutual intention of the drawer and the payee. The bill of lading could well be treated as a supplement or appendix restricting and qualifying, equitably though not legally, the general terms of the bill of exchange, and pointing out informally the fund from which the drawee was requested and expected to make payment. Certainly the drawee would be at no loss to understand what fund was in contemplation. Altogether there was ample evidence to warrant the jury in finding that the intention was to establish a substantial ownership of the fund in the bank, and, consequently, to make to the bank an equitable assignment of that particular fund; and it was not error to refer the question to the jury for determination.

2. In a proceeding by garnishment, a mere formal legal title to the fund in controversy in the debtor of the garnishing creditor will not prevail over a substantial equitable title which a third person acquired from such debtor before the garnishment was served. If the debtor himself could not hold or recover the fund as against such third person, his creditor ought not to be allowed to do so. Whatever is not rightfully and justly the property of a debtor, though he may have the formal legal title to it, ought not to be applied to the payment of his debts. He ought rather to be treated as holding such title as he had in trust for the real owner, and not for the benefit of himself or of his own

creditors. On the facts in evidence, this case had a right result, and is now finally disposed of.

Two bills of exchange and two garnishments were involved in the litigation, but what has been said of one bill and garnishment applies equally to the other.

*Judgment affirmed.*