## ROWLAND *v.* GREGG & SON.

1. Where property has been levied on and a claim interposed, the claimant can not, for the purpose of protecting the property, show paramount title in a third person.

2. A person who may have title to property or an interest therein, when a levy is made upon it, must interpose a claim in his own name, and can not defeat the levy by authorizing or directing an agent to file a claim as the owner.

3. That factors who have made advances may file a claim, where property held by or consigned to them has been levied on under a fi. fa., does not authorize an agent, having no interest in the property, to interpose in his own name a claim thereto for the protection of his principal, where it has been levied on as the property of a third person.

Argued April 14, — Decided May 11, 1905.

Levy and claim. Before Judge Cobb. City court of Athens. November 29, 1904.

An attachment in favor of Rowland, trading as Rowland & Company, against Bartlett, Kuhn & Company, was levied on a lot of corn in a car standing upon a side-track of the Georgia railroad in the city of Athens. Gregg & Son interposed a claim. On the trial the plaintiff introduced certain evidence and closed. It does not appear to have been contended that he did not make out a prima facie case. The claimant then assumed the burden of proof. The court admitted certain evidence over objection of plaintiff, and at the close of the evidence declined to direct a verdict in favor of the plaintiff, and of his own motion directed one in favor of the claimants. Plaintiff excepted. Taken together,

the evidence showed that Bartlett, Kuhn & Company had shipped the corn from a point in Indiana to Athens, Georgia. The bill of lading showed that it was shipped to their order, "notify J. T. Brown." They then drew a draft on Brown for the price of the corn and endorsed the bill of lading in blank; and the draft with the bill of lading attached was "purchased" by the First National Bank of Terre Haute, Indiana. On arrival of the car at Athens, Brown inspected it and refused to accept it. Some negotiations followed between Bartlett, Kuhn & Company and an agent representing them and the broker who had sold the corn for them to Brown. In the meantime the draft with the bill of lading attached had been forwarded by the Indiana bank to the bank at Athens. Brown did not pay it. One of the contentions of the plaintiff in attachment was, that, whether the Indiana bank might have maintained a claim in its own name or not, the claim by Gregg & Son was not sustainable. On the subject of their authority to interpose the claim, the cashier of the Indiana bank testified as follows: "After J. T. Brown, consignee, refused payment of draft, my understanding is that the title to this car of corn became vested in this bank as holder of the draft with bill of lading attached. We directed Joseph Gregg & Son to honor draft and take possession of the car of corn and sell for our account. After our purchase of draft with bill of lading attached, Bartlett, Kuhn & Company never acquired any title to the car. We did not go into the market and sell this car of corn, but directed Gregg & Son to sell it on our account. This draft was taken up by Gregg & Son at our request. We furnished the money for that purpose, and they sold on our account, as heretofore stated. No one took up the draft for this car of corn other than this bank itself through Gregg & Son, who took it up for us with funds furnished by us, and sold the same for our account." One of the firm of Gregg & Son testified on this subject as follows: "Our firm were requested to pay to the National Bank of Athens a certain draft drawn by Bartlett, Kuhn & Company on J. T. Brown, Athens, Georgia, with bill of lading attached, for the car of corn in dispute. We were directed to sell this corn to the best advantage for account of the First National Bank of Terre Haute, Indiana, to whom the car belonged. As we feared there would be trouble about the car of corn, we refused to pay the draft unless the First

National Bank of Terre Haute, Indiana, would put us in possession of funds to do so; and on June 15, 1904, the Fourth National Bank of Atlanta received telegram from the First National Bank of Terre Haute to cash our draft for $563.84, which was done by the Fourth National Bank." They (the claimants) paid the draft by mail on June 15, 1904, sending to Athens their certified check on the Fourth National Bank of Atlanta for the amount stated, and received by return mail from the Athens Bank the draft, marked "paid," with the bill of lading attached thereto. "Soon after we paid this draft in Athens at the instance of the First National Bank of Terre Haute, Indiana, we learned that the property had been attached by Rowland & Company, on an alleged claim against Bartlett, Kuhn & Company. We were requested by the First National Bank of Terre Haute to replevy this car of corn as owners, as we had paid the draft drawn on J. T. Brown & Company." The bank indemnified them in the matter of getting a security on the claim bond, which they filed, and also from liability on account of their signing the bond as principal. After thus obtaining possession of the corn, Gregg & Son sold it and sent returns to bank, deducting the cost of the bond and attorney's fees, which they were authorized by the bank to pay. They also deducted commissions for making the sale.

*McWhorter, Strickland & Green,* for plaintiff.
*T. S. Mell* and *Hamilton Douglas,* contra.

LUMPKIN, J. (After stating the facts.) A claim is a statutory proceeding which is authorized to be interposed where a levy has been made on property; but the statute contemplates that this shall be done by some person who claims the property and "shall make oath" thereto. Civil Code, § 4611. On the trial of a claim, after the plaintiff has made out a prima facie case, in order to successfully overcome it the claimants must show title in themselves, or such an interest as would be superior to the right of the plaintiff in fi. fa. to proceed with the execution or attachment. They can not sustain a claim in favor of themselves by showing title in a third person. *Robinson* v. *Schly,* 6 *Ga.* 516, 529; *Moody* v. *Travis,* 76 *Ga.* 833; *Beers* v. *Dawson,* 8 *Ga.* 556; *Stirks* v. *Johnson,* 99 *Ga.* 298; *Thompson* v. *Waterman,* 100 *Ga.* 586; *Parker* v. *Mathews,* 106 *Ga.* 49; *Burt* v. *Rubley,* 113 *Ga.* 1144. Accord-

ing to the evidence of the claimants, there was an equitable assignment to the Indiana bank. *Haas* v. *Old National Bank*, 91 *Ga.* 307. The claim, however, was not interposed by the bank, but by Gregg & Son. What title or interest had they in the property, or what right to file a claim to it? The mere direction by an owner of property to another, that the latter should file a claim in his own name, would not make such proceeding lawful. If a person has a legal right, it does not follow that he may delegate to another the power to litigate in the name of such other in respect to it. Generally an agent has no authority to enforce in his own name the rights of his principal. To this rule there are certain exceptions. But for an agent to be merely instructed by his principal to institute litigation in his own name is not one of them. Civil Code, § 3037. It is urged that the claimants were factors, and as such were entitled to file this claim. There is nothing in the evidence that shows that they were factors, rather than mere agents. Nor does it appear that they had made any advances, or acquired any lien. The property was in the physical possession of the railroad-company at Athens. They declined to advance any money, and the bill of lading was taken up with the money of the bank. The testimony was that they sent a check to Athens on June 15, and received a bill of lading by return mail. The levy was made on June 16. So that it is uncertain whether they had received the bill of lading prior to the levy. But whether they had or not, they had no interest in the property which would sustain a claim interposed in their own names. In cases where factors or others than the owner of property have been allowed to interpose a claim to a levy, it has been because such claimants had title or a lien or interest of some character which they were authorized to protect.

The claimants relied upon the case of *Wade* v. *Hamilton*, 30 *Ga.* 450. The second headnote of that case is as follows: "The interest which will support a claim under our statute is any interest which renders the property not subject to the levying fi. fa. or attachment, or which is inconsistent with the plaintiff's right to proceed in selling the property." In that case it appeared that the owner of cotton obtained an advance from a firm and delivered the cotton to a common carrier consigned to them. It was held that this gave to the factors such an interest as would

support a claim when the cotton was levied on under a fi. fa. against the consignor.   Stephens, J., who delivered the opinion, said: " Their lien gave them such an interest as entitled them to payment of their debt in preference to the plaintiffs in attachment, and we think that was interest enough to support a claim under the statute.   The very question to be tried in a claim case is, whether or not the claimant has such an interest in the property as renders it not subject to the attachment or fi. fa." In each of the cases where a claim has been sustained there was some interest on which to base it.   In the present case, at the time of the interposition of the claim no interest in the claimants appears to have existed. See *Elliott* v. *Cox*, 48 *Ga.* 39; *Hardeman* v. *De Vaughn*, 49 *Ga.* 599; *Burrus* v. *Kyle*, 56 *Ga.* 24; *Hurley* v. *Epps*, 69 *Ga.* 611; *Durdin* v. *Hill*, 75 *Ga.* 228; *Willingham* v. *Rushing*, 105 *Ga.* 72, 74.   That one who claims property may interpose such a claim by himself or his agent or attorney (Civil Code, § 4611) does not mean that the agent or attorney may interpose the claim in his own name.   Section 3038 of the Civil Code, touching the right of an agent to protect his possession, has no relevancy to the facts of the present case.   The construction which should be placed upon it has been discussed in *Mitchell* v. *Georgia & Alabama Ry.*, 111 *Ga.* 760.   The case of *Groover* v. *Warfield*, 50 *Ga.* 664, holds that "Cotton factors can, in their own names, recover all the damages resulting from a breach of contract by the buyer of cotton from them, although they may be bound to pay the same, when recovered, to their consignors." This does not affect the question of the right to interpose a claim, under the facts disclosed by the evidence here.

*Judgment reversed.   All the Justices concur, except Candler, J., absent.*