## OUR BANK *v.* CORRY.

1. Under the peculiar facts of this case, the plaintiff could not subject the two mules levied on, as being the same mules which were included in two bills of sale made to it to secure an indebtedness.
2. The case was not controlled by the question of whether a junior bill of sale to secure an indebtedness would take priority over a senior mortgage given by the same debtor to a bank, the official attestation of which mortgage, under which it was recorded, was by a person claimed to have been a stockholder in the bank.
3. Where personal property has been sold on a credit, with title retained by the vendor as security until payment, the vendee in possession, who has paid a portion of the purchase-money, has such an interest as will authorize the interposition of a claim, if the property is levied on by virtue of an execution against a defendant other than the vendor.

JUNE 17, 1916.

Claim. Before Judge Park. Greene superior court. July 27, 1915.

On March 13, 1912, W. R. Corry executed to the Bank of Siloam a note for $700, due the fifteenth of the following October, and a mortgage to secure it. In this mortgage certain mules were described, among them "one black horse-mule six years old named

Dan, and one black horse-mule six years old named Rattler." Later he executed to another bank called "Our Bank," two bills of sale to secure debts. These included certain other live stock not material to be mentioned here, and also "two black horse-mules four years old named Punch and Ed, of the value of $500." In December, 1913, Our Bank brought trover against Corry for the property included in the bill of sale to it. Bail process was sued out, and certain of the live stock sued for were seized. It was recited in the bill of exceptions that, among other animals seized by the sheriff, were "two black or bay horse-mules named Punch and Ed." Neither party replevied the property, and, after notice, an order of the judge of the superior court was obtained for the sale of such property as perishable and expensive to keep, under the provisions of the Civil Code (1910), § 5153. The mules included in this order were sold on December 17, 1913. On July 30, 1914, Our Bank obtained a verdict against Corry in the trover suit for $1293.19, and took a judgment on the verdict, which recited that it was to be "a first lien upon the property sued for, as by statute provided," and continued: "Let the same be credited with $173.43, net proceeds of the mules seized by the sheriff and sold under process in this case." In the meantime, in January, 1914, the Bank of Siloam foreclosed its mortgage on the mules described therein, and an order was obtained to sell them as perishable property and expensive to keep. The property was advertised by posting, and a sale was made, at which one Dolvin purchased the property and paid for it. Among the live stock thus seized and sold were two mules described as being "one black horse-mule six years old named Dan, and one black horse-mule six years old named Rattler." Dolvin, being vice-president of the Siloam Bank, reported to the cashier that he would either keep the mules or that the bank could take them. The bank took the mules, and sold them to Mrs. W. R. Corry, the wife of the original debtor, taking notes and reserving title as security until the purchase-money should be paid. She has paid $70 of the total of $596.

One of the points of controversy in the present case is that Our Bank contends that the mules called Dan and Rattler in the mortgage to the Siloam Bank, and those called Punch and Ed in the bills of sale to Our Bank, were the same mules, though called by different names; that the mules which were seized by the sheriff

under the bail-trover process in its favor against Corry as being Punch and Ed, and which were sold as perishable property after thus being seized, were not in fact Punch and Ed, but other mules which had been delivered to the sheriff instead of them under the bail process in the trover case. It attacked the mortgage held by the Siloam Bank as not being properly attested and recorded, so as to have priority over its bills of sale; and also contended that the advertisement of the sale under the mortgage of the Siloam Bank was not properly posted, because the three places of posting were near together in Greensboro. The evidence was not in exact accord as to the places of posting. There was a considerable amount of evidence, which need not be here set out. The presiding judge directed a verdict in favor of the claimant, and the plaintiff excepted.

*Samuel H. Sibley,* for plaintiff.

*Noel P. Park* and *George A. Merritt,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. The controlling point in the case is this: Our Bank took two bills of sale from Corry to secure an indebtedness due by him. They described certain live stock, among which were "two black horse-mules four years old named Punch and Ed, of the value of $500." The bank instituted an action of trover against Corry, to recover the property covered by these bills of sale. It also sued out bail process, and the sheriff seized "two black or bay horse-mules named Punch and Ed," and also one other mule and a horse. Neither party having replevied the animals, an application was made to the court, and an order obtained to sell them as perishable property and expensive to keep; and they were sold accordingly. Later Our Bank obtained a money verdict and judgment in its action of trover, and in the judgment it was specified that it should be credited with the net proceeds of the mules seized by the sheriff and previously sold. Thus Our Bank has asserted title to Punch and Ed, has caused mules to be seized and sold as Punch and Ed, has taken a judgment declaring that the proceeds of this sale shall be credited on its recovery, and presumably has received such proceeds as being the proceeds of the sale of the aforesaid Punch and Ed. Our Bank would now disregard all of this, and declare that Punch and Ed were only aliases of "Dan and Rattler," two mules which had been included in the mortgage from Corry

to the Bank of Siloam, sold under the foreclosure of that mortgage, and bought by the Bank of Siloam. It does not contend that there is any idem sonans in the names. The described ages of Punch and Ed do not correspond with those of Dan and Rattler. Still it is insisted that there was an identity in fact, and that Dan and Rattler are Punch and Ed masquerading under other names. Punch and Ed it was in Our Bank's bills of sale. Punch and Ed it was in the seizure and sale, and the net proceeds of Punch and Ed went into Our Bank's till. Mules have no patronymics to act as additional means of identification; but we think that Our Bank has established too firmly that its dealings involved Punch and Ed to now assert that the two mules sold were not Punch and Ed at all, but some other mules, and to subject Dan and Rattler as being the real Punch and Ed, after Dan and Rattler have been sold under the foreclosure of a mortgage given by the same debtor to another, and bought and resold to the claimant, whose purchase-money notes are outstanding, and whose good faith is not attacked.

2. If this were merely a contest as to priority between the mortgage of the Bank of Siloam and the bills of sale of Our Bank, the question of the proper attestation of the mortgage of the former bank for record would be important. But whether or not the officer who attested the mortgage was disqualified from doing so, as being a stockholder in the Bank of Siloam, this did not render the mortgage void, but would only affect the matter of record and notice; and from what has been said above it appears that Our Bank is not in position to make the case turn on the mere question whether a younger bill of sale should outrank an older mortgage not properly attested for record, given by the same debtor to two creditors to secure debts, and treating both as covering in part the same property.

3. Mrs. Corry held the two mules to which she laid claim under a purchase from the Bank of Siloam, after the latter had bought at the sheriff's sale under the foreclosure of its mortgage on the two mules called Dan and Rattler. It is true that she had not paid all of the purchase-money. But this did not prevent her from having such an interest as authorized her to file a claim. *Wade* v. *Hamilton,* 30 *Ga.* 450; *Hurley* v. *Epps,* 69 *Ga.* 611, 612; *Rowland* v. *Gregg,* 122 *Ga.* 819 (50 S. E. 949); *Blalock* v. *Wells,* 141 *Ga.* 623, 625 (81 S. E. 853).

The evidence as to the posting of the advertisement under the sale based on the mortgage foreclosure was not such as to require a verdict for the present plaintiff; certainly not as against the claimant.

From the foregoing discussion it follows that the judge did not err in directing a verdict in favor of the claimant.

*Judgment affirmed. All the Justices concur.*