EVANS MARKETING AGENCY *v.* FEDERATED FRUIT & VEGETABLE GROWERS INCORPORATED *et al.*

No. 7159.   FEBRUARY 12, 1930.

32

*John R. L. & Joseph Le C. Smith* and *George A. Pindar,* for plaintiff.

*R. C. Johnson, Jule Fellon,* and *Jule W. Felton,* contra.

BECK, P. J. (After stating the foregoing facts.) After a review of the record in this case, we are of the opinion that the court erred in overruling certain of the demurrers to the equitable amendment filed by the claimant, Fruit Growers Inc., and to the intervention filed by the Credit Corporation. From the amendment filed in aid of the claim it appears that the claim was based upon a contract, a copy of which was attached to the amendment; that Hale, the defendant in execution, applied to the Credit Corporation for money and supplies with which to make a peach crop for the season of 1928, and executed the contract attached to the amendment. In the contract it is provided that the control of all peaches in question is to be vested in the claimant for the purpose of marketing the same and applying the proceeds to its claim.

The contract to which reference is here made is headed, "Crop Lien and Chattel Mortgage." It recites an indebtedness of Hale (the first party) to the Credit Corporation (the second party) in the sum of $8,000, and refers to the note given to the Credit Corporation of even date with this paper. It further recites: "Now, therefore, for the purpose of securing the payment of said note and all advances made by the second party to the first party, together with any renewal or extension thereof, and any other indebtedness now due or to become due or hereafter to be contracted up to and including the principal sum of $8,000, the first party consents and agrees in and by this instrument in writing that the second party shall have, and to that end does hereby grant and give unto the second party, a lien upon all the peach crops to be grown prior to June 30, 1928, upon the following described lands in County of Pike, State of Georgia, to wit:" Here follows a description of the land. It is further stipulated: "The first party further agrees that all crops raised on the land above described shall be marketed solely through the Federated Fruit & Vegetable Growers Inc., and that the said Federated Fruit & Vegetable Growers Inc. is hereby authorized to retain and to pay over, prior to, at, or after maturity of the said note, out of the proceeds of the sale of said crop, sufficient money to repay all advances made by the second party to the first party hereunder, together with the interest thereon, and also retain sufficient money to repay itself for any and all expenses which it may have necessarily incurred in connection with such marketing." And again it is stipulated: "And provided, finally, that the first party may retain possession of said land, crops, and chattels until default be made in the payment of said indebtedness or in the performance of any of the terms, conditions, and agreements hereof; but if the same is not paid when due, or if before said indebtedness is due the first party shall attempt to make way with or remove any or all of said crops and/or chattels from the place where they now are or from the premises above described or shall neglect to take care of and maintain the same in good condition, or should the second party at any time deem its security unsafe or in danger, then and in either or all of such events the second party, at its option and in its discretion, shall have the right to consider and declare the whole of the said indebtedness then owing and unpaid immediately due and forthwith payable;

and thereupon the second party may at once, without notice thereof, enter suit thereon and/or foreclose and sell as provided by law the crops and chattels, and the filing of suit and/or foreclosure shall, without notice to the first party, immediately entitle the second party, at its option, to the appointment of a receiver for the purpose of taking possession of said crops and chattels, and selling the same, in which event the receiver shall have power to harvest, gather and process said crops in order to prepare them for sale, and to provide for and take care of any live stock pending a sale thereof." The claimant in this case was not a party to this contract. It is true that it appears in the contract that Hale, the grower of the peaches, agreed that the crops raised on the land should be marketed solely through the "Federated Fruit & Vegetable Growers Inc.," and that this corporation is authorized to retain and pay over, prior to or after maturity of the note given, out of the proceeds of the sale of said crop sufficient money to repay all advances made by the second party to the first party under the contract, together with interest, etc. This stipulation in the contract did not place any title or interest in the crop that could be the basis of a claim filed by it and for itself, and the equitable amendment, to which is attached the entire contract, does not show any title in the Federated Fruit & Vegetable Growers Inc. It does not provide for the taking possession of the crop by the Federated Fruit & Vegetable Growers Inc., though it does provide for seizure of the crop by the Federated Growers Credit Corporation. Under the contract the Fruit Growers Inc. may have had a certain interest in the fruit, that is, in having it delivered to it for the purpose of handling and sale; but it had no vestige of title, special or general, equitable or legal, and under those circumstances it could not maintain a statutory claim; and when it did file such a claim, it could not by any amendment convert the case into a general suit in equity. A claimant may file equitable amendments in aid of its claim, but such amendments must be germane to the issue. It may be for the purpose of having outstanding deeds canceled, which on their face would place the title in some third party, but which under equitable pleadings, with proper parties made, might be canceled, thus leaving the title in the claimant; or other equitable relief might be obtained by the claimant in the claim case under proper equitable pleadings. But such equitable amendments must be

aimed at showing a legal or equitable title in the claimant, or some interest in the nature of an equitable title, to support a claim. A factor, for instance, having possession of the property—and we lay emphasis upon the qualification "having possession of the property"—and a lien for money or supplies advanced, may claim the property. But the Fruit Growers Inc. was not a factor, and the contract which Hale made with the Credit Corporation did not make it a factor or give it any right as the agent of the Credit Corporation which would have enabled it to take possession of the property. Not having a title, equitable or legal, to the property, the Fruit Growers Inc. could not assert and maintain a claim in itself. Certainly the contract made by Hale with a third person, in which it is stipulated that "all crops raised on the land above described shall be marketed solely through the Federated Fruit & Vegetable Growers Inc. and that said Federated Fruit & Vegetable Growers Inc. is authorized to retain and pay over, out of the proceeds of the sale of said crop, sufficient money to repay all advances made by [the Credit Corporation, the second party, to Hale, the first party], and also to retain sufficient money to repay itself for any and all expenses which it may have necessarily incurred in connection with such marketing," did not vest any interest in the Federated Fruit & Vegetable Growers Inc. which would support a claim. Even if this clause which we have quoted, or any other part of this contract between Hale and the Credit Corporation made the Fruit Growers Inc. an agent for the Credit Corporation, that would not have authorized the Fruit Growers Inc. to file a claim in its own name. In *Rowland* v. *Gregg,* 122 *Ga.* 819 (50 S. E. 949), it was said: "A claim is a statutory proceeding which is authorized to be interposed where a levy has been made on property; but the statute contemplates that this shall be done by some person who claims the property and 'shall make oath' thereto. Civil Code, § 4611. On the trial of a claim, after the plaintiff has made out a prima facie case, in order to successfully overcome it the claimants must show title in themselves, or such an interest as would be superior to the right of the plaintiff in fi. fa. to proceed with the execution or attachment. They can not sustain a claim in favor of themselves by showing title in a third person. *Robinson* v. *Schly,* 6 *Ga.* 516, 529; *Moody* v. *Travis,* 76 *Ga.* 833; *Beers* v. *Dawson,* 8 *Ga.* 556; *Stirks* v. *Johnson,* 99 *Ga.* 298 [25 S. E. 648];

*Thompson* v. *Waterman,* 100 *Ga.* 586 [28 S. E. 286]; *Parker* v. *Mathews,* 106 *Ga.* 49 [31 S. E. 784]; *Burt* v. *Rubley,* 113 *Ga.* 1144 [39 S. E. 409]. According to the evidence of the claimants, there was an equitable assignment to the Indiana bank. *Haas* v. *Old National Bank,* 91 *Ga.* 307 [18 S. E. 188]. The claim, however, was not interposed by the bank, but by Gregg & Son. What title or interest had they in the property, or what right to file a claim to it? The mere direction by an owner of property to another, that the latter should file a claim to his own name, would not make such proceeding lawful. If a person has a legal right, it does not follow that he may delegate to another the power to litigate in the name of such other in respect to it. Generally an agent has no authority to enforce in his own name the rights of his principal. To this rule there are certain exceptions. But for an agent to be merely instructed by his principal to institute litigation in his own name is not one of them. Civil Code, § 3037. It is urged that the claimants were factors, and as such were entitled to file this claim. There is nothing in the evidence that shows that they were factors, rather than mere agents. Nor does it appear that they had made any advances, or acquired any lien."

When the intervenor came into this case, he took the case as he found it. He found a case that could not stay in court as against a general demurrer. The contract between this intervenor, the Credit Corporation, and Hale did not show title in the former. It showed the existence of a lien; and if that lien was superior to the title of the plaintiff in execution, it could have been asserted at law. But without regard to this, there was no valid claim so as to make a case in which the Credit Corporation could intervene. It may be that the equitable amendment filed by the claimant and the intervention of the Credit Corporation show a case in which the seizure of the peach crop in July, under the execution in favor of the Marketing Agency, would work great hardship and cause serious loss; but that fact did not authorize the filing of a statutory claim. Whether it might have authorized an equitable suit for the appointment of a receiver, who could dispose of the crop and hold the proceeds until the rights of all the parties to it could be adjudicated, is not now for us to decide. Nor is it for us in this suit to decide what proceedings the claimant or the Credit Corporation may maintain to assert the equities which they attempted to

assert in this suit. For the reasons that we have given above, and under the pertinent rules of law which we have restated, the claim case could not be maintained, and the equitable amendment did not give the claimant a standing in court. From this it follows that the court erred in not sustaining the demurrer to the equitable amendment and the intervention: and having erroneously overruled demurrers which should have been sustained, the other proceedings were nugatory.

*Judgment reversed. All the Justices concur.*